# EXHIBIT C

| | |
|---|---|
| | **Policy Number:** 159000006 |

### State National Insurance Company, Inc.

1900 L. Don Dodson Drive, Bedford, TX 76021

**Company Number:** 90

**Module Number:** 03

# Commercial Auto - Declarations

**1. Named Insured and Address**

AMDC Recreation LLC
JERSEY RECREATION LLC
717-727 Broadway
Newark, NJ  07104

**Agent 0000098**

RISK PARTNERS INC
709 STOKES ROAD SUITE 101
MEDFORD, NJ  08055
(609) 714-7760

---

**Policy Period From:**   11/26/2015   to   11/26/2016       12:01 A.M.Standard Time at your mailing address shown above.

**You are a:**       LLC

**Your Business/Operation:**       Transport for Adult Day Care Centers

---

IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,  WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY, THERE ARE EXCLUSIONS, CONDITIONS AND LIMITATIONS CONTAINED IN THE POLICY FORMS AND ENDORSEMENTS

**2.**                           **SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "Autos" shown as Covered "Autos".  "Autos" are shown as covered "Autos" for a particular coverage by entry of one or more of the symbols from the Covered Auto Section of the Commercial Auto Coverage Form next to the name of the coverage.

| | Coverages | Covered Auto Symbols | Limit (The most we will pay for any one accident or loss) | Premium |
|---|---|---|---|---|
| A. | Liability | 7 | $1,000,000 each accident | ■■■■ |
| B | Medical Payments | Not Covered | $0 each person | Not Covered |
| C. | Personal Injury Protection (PIP) | Not Covered | Separately stated in each endorsement minus the deductible of $ N/A for each covered auto per accident | Not Covered |
| D. | Optional No Fault Benefits | Not Covered | Separately stated in Additional First Party Benefit Endorsement | Not Covered |
| E. | Uninsured & Underinsured Motorist | 7 | $35,000 each accident | ■■■ |
| F. | Comprehensive | Not Covered | Actual Cash Value or cost of repair, whichever is less, for each covered auto minus the deductible. But no deductible applies for loss caused by fire or lightning.  **See Item Four** for hired or borrowed autos. | Not Covered |
| G. | Collision | Not Covered | Actual Cash Value or cost of repair, whichever is less, minus the deductible for each covered auto**. See Item Four** for hired or borrowed autos. | Not Covered |
| H. | Towing & Labor | Not Covered | $50 each disablement of Private Passenger Auto | Not Covered |

Premium for Endorsements (not included in A through H above)                                                                Not Applicable

| | |
|---|---|
| Total Annual Premium | ■■■■ |
| PLIGA Surcharge | ■■■ |
| Total Policy Amount Due | ■■■■ |

---

| | | |
|---|---|---|
| 11/24/2015 | By: | *Terry L. Loftwell* |
| Countersignature Date | | Representative |

Issue Date: 11/24/2015                                   Home Office Copy

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Name Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

**3. SCHEDULE OF COVERED AUTOS YOU OWN**

| | VEHICLE 1 | VEHICLE 2 | VEHICLE 3 | VEHICLE 4 | VEHICLE 5 | VEHICLE 6 | VEHICLE 7 |
|---|---|---|---|---|---|---|---|
| **Year** | 2006 | 2012 | 2013 | 2013 | 2012 | 2005 | 2005 |
| **Make** | Honda | Honda | Toyota | Toyota | Ford | Ford | FORD |
| **Model** | Odyssey | Odyssey | Sienna | Sienna | E350 - 15 seating | E250 - 12 seating | E350 - 10 seating |
| **Stated Amount** | | | | | | | |
| **Vehicle Identification Number** | 5FNRL38466B414174 | 5FNRL5H29CB145691 | 5TDZK3DC6DS351196 | 5TDZK3DC6DS363364 | 1FBNE3BL5CDA07916 | 1FTNS24W75HA12942 | 1FDWE35L95HA02527 |
| **Garaging City** | Newark | Newark | Newark | Newark | Newark | Newark | Newark |
| **State** | NJ | NJ | NJ | NJ | NJ | NJ | NJ |
| **Rate Territory** | 002 | 002 | 002 | 002 | 002 | 002 | 002 |
| **Class Code** | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 |

| COVERAGE | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.  Liability** | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | |
| **E.  Uninsured & Underinsured Motorist** | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | |
| **OPTIONAL COVERAGE** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **VEHICLE TOTAL** | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | | ▆ | |

| | |
|---|---|
| **4.  Hired or Borrowed Automobiles Coverage** | Not Covered |
| **5.  Non-Owned Automobile Coverage** | Not Covered |
| **6.  Drive Other Car Coverage** | |
| **Financial Responsibility Law** | |
| **Additional Insureds** | |
| **POLICY PREMIUM TOTAL:** | |

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Name Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

### 3.  SCHEDULE OF COVERED AUTOS YOU OWN

| | VEHICLE 8 | VEHICLE 9 | VEHICLE 10 | VEHICLE 11 | VEHICLE 12 | VEHICLE 13 | VEHICLE 15 |
|---|---|---|---|---|---|---|---|
| Year | 2005 | 1998 | 2009 | 2009 | 2007 | 2010 | 2005 |
| Make | FORD | FORD | FORD | FORD | FORD | FORD | FORD |
| Model | E450 - 20 seating | E350 - 15 seating | BUS - 18 seating | E450 - 18 seating | E450 - 20 seating | E450 - 21 seating | E450 - 20 seating |
| Stated Amount | | | | | | | |
| Vehicle Identification Number | 1FDXE45PN5HA06185 | 1FDWE30L1WHC11785 | 1FD4E45S98DB60270 | 1FD4E45S48DB60287 | 1FDXE45S17DA20970 | 1FDFE4FS0ADA21089 | 1FDXE45P95HA59906 |
| Garaging City | Newark | Newark | Newark | Newark | Newark | Newark | Newark |
| State | NJ | NJ | NJ | NJ | NJ | NJ | NJ |
| Rate Territory | 002 | 002 | 002 | 002 | 002 | 002 | 002 |
| Class Code | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 |

| COVERAGE | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.  Liability** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | |
| **E.  Uninsured & Underinsured Motorist** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | |
| **OPTIONAL COVERAGE** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **VEHICLE TOTAL** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | |

| | |
|---|---|
| 4.  Hired or Borrowed Automobiles Coverage | Not Covered |
| 5.  Non-Owned Automobile Coverage | Not Covered |
| 6.  Drive Other Car Coverage | |
| Financial Responsibility Law | |
| Additional Insureds | |
| **POLICY PREMIUM TOTAL:** | |

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Name Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

### 3. SCHEDULE OF COVERED AUTOS YOU OWN

| | VEHICLE 17 | VEHICLE 18 | VEHICLE 19 | VEHICLE 20 | VEHICLE 21 | VEHICLE 22 | VEHICLE 23 |
|---|---|---|---|---|---|---|---|
| **Year** | 2004 | 2004 | 2000 | 2005 | 1999 | 2004 | 2007 |
| **Make** | FORD | FORD | FORD | FORD | FORD | NISSAN | FORD |
| **Model** | E250 - 12 seating | E350 - 15 seating | E450 - 20 seating | E450 - 20 seating | E350 - 15 seating | QUEST | E450 - 20 seating |
| **Stated Amount** | | | | | | | |
| **Vehicle Identification Number** | 1FTNS24L74HA96636 | 1FBSS31L24HB03218 | 1FDXE45F2YHB85391 | 1FDXE45P35HA06294 | 1FBSS31L1XHB19494 | 5N1BV28U94N346503 | 1FDXE45S37DA20971 |
| **Garaging City** | Newark | Newark | Newark | Newark | Newark | Newark | Newark |
| **State** | NJ | NJ | NJ | NJ | NJ | NJ | NJ |
| **Rate Territory** | 002 | 002 | 002 | 002 | 002 | 002 | 002 |
| **Class Code** | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 |

| COVERAGE | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.  Liability** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | |
| **E.  Uninsured & Underinsured Motorist** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | |
| **OPTIONAL COVERAGE** | | | | | | | | | | | | | | |
| **VEHICLE TOTAL** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | |

| | |
|---|---|
| **4.  Hired or Borrowed Automobiles Coverage** | Not Covered |
| **5.  Non-Owned Automobile Coverage** | Not Covered |
| **6.  Drive Other Car Coverage** | |
| **Financial Responsibility Law** | |
| **Additional Insureds** | |
| **POLICY PREMIUM TOTAL:** | |

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Name Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

### 3. SCHEDULE OF COVERED AUTOS YOU OWN

| | VEHICLE 24 | VEHICLE 25 | VEHICLE 26 | VEHICLE 27 | VEHICLE 28 | VEHICLE 29 | VEHICLE |
|---|---|---|---|---|---|---|---|
| Year | 2013 | 2013 | 2013 | 2014 | 2012 | 2013 | |
| Make | FORD | FORD | FORD | FORD | FORD | FORD | |
| Model | E450 - 20 seating | E450 - 20 seating | E450 - 20 seating | E450 - 20 seating | E450 - 20 seating | E450 - 20 seating | |
| Stated Amount | | | | | | | |
| Vehicle Identification Number | 1FDFE4FS0DDA93317 | 1FDFE4FS0DDA85704 | 1FDFE45SXDDA85712 | 1FDFE4FS6EDA29106 | 1FDFE4FS0CDA87063 | 1FDFE4FS6DDA57034 | |
| Garaging City | Newark | Newark | Newark | Newark | Newark | Newark | |
| State | NJ | NJ | NJ | NJ | NJ | NJ | |
| Rate Territory | 002 | 002 | 002 | 002 | 002 | 002 | |
| Class Code | 8730 | 8730 | 8730 | 8730 | 8730 | 8730 | |

| COVERAGE | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED | PREMIUM | DED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A.  Liability | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | | |
| E.  Uninsured & Underinsured Motorist | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | | |
| OPTIONAL COVERAGE | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **VEHICLE TOTAL** | ■ | | ■ | | ■ | | ■ | | ■ | | ■ | | | |

| | |
|---|---|
| **4.  Hired or Borrowed Automobiles Coverage** | Not Covered |
| **5.  Non-Owned Automobile Coverage** | Not Covered |
| **PLIGA Surcharge** | ■ |
| **Additional Premium** | $0 |
| **POLICY PREMIUM TOTAL:** | ■ |

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Named Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

# ENDORSEMENT SCHEDULE

7.  **The following Forms and Endorsements are applicable to the Commercial Automobile Coverage Declaration:**

| Form Number | Edition Date | Description |
|---|---|---|
| **MCA 010** | 1114 | Commercial Auto Form |
| **MCA 820*** | 0713 | Mandatory Endorsement - New Jersey |
| **MCA 301** | 0197 | Additional Insured - Lessor |
| **MCA 419** | 0206 | Terrorism Exclusions Endorsement |
| **SNICDRL** | | Driver Schedule |
| **SNICANI** | | Additional Named Insured Schedule |
| **SNICINT** | | Additional Interest Schedule |

* Mandatory Form

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Named Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

## DRIVER SCHEDULE

| No. | Name | Date of Birth | License Number | License State |
|---|---|---|---|---|
| 1 | Jannett Hernandez | ███ | ON FILE | NJ |
| 2 | Oscar Munozrodriguez | ███ | ON FILE | NJ |
| 3 | Jose Liriano | ███ | ON FILE | NJ |
| 4 | Aydil Torres-Figueredo | ███ | ON FILE | NJ |
| 5 | Felix Moya-Brito | ███ | ON FILE | NJ |
| 6 | Essam Aziz | ███ | ON FILE | NJ |
| 7 | Victor Lopez | ███ | ON FILE | NJ |
| 8 | JESSICA I AMAYA | ███ | ON FILE | NJ |
| 9 | LORENZO BENCOSME | ███ | ON FILE | NJ |
| 10 | FRANZ J BERRIO | ███ | ON FILE | NJ |
| 11 | JUAN T CORONA ENCARNACION | ███ | ON FILE | NJ |
| 12 | OCTAVIO DIAZ | ███ | ON FILE | NJ |
| 13 | ADILSON G DONASCIMENTO | ███ | ON FILE | NJ |
| 14 | MARIA I GOMEZ | ███ | ON FILE | NJ |
| 15 | SHERLIE A GONELL | ███ | ON FILE | NJ |
| 16 | GUILLERMO F GRATEREAUX | ███ | ON FILE | NJ |
| 17 | SIMION C HINOJOSA-TOMASTO | ███ | ON FILE | NJ |
| 18 | LIZETTE MARTINEZ-PASTOR | ███ | ON FILE | NJ |
| 19 | JORGE L NUNEZ | ███ | ON FILE | NJ |
| 20 | SEGUNDO J ORTEGA | ███ | ON FILE | NJ |
| 21 | SAMUEL PERALTA-RAMOS | ███ | ON FILE | NJ |
| 22 | CHRIST S PIERRE VANCOL | ███ | ON FILE | NJ |
| 23 | CARMEN M PUEYO | ███ | ON FILE | NJ |
| 24 | VIRGINIO R RIVERAS-MATOS | ███ | ON FILE | NJ |
| 25 | LEOCADIO RODRIGUEZ | ███ | ON FILE | NJ |

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Named Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

## DRIVER SCHEDULE

| No. | Name | Date of Birth | License Number | License State |
|---|---|---|---|---|
| 26 | GILBERTO A ROSARIO | ▮▮▮ | ON FILE | NJ |
| 27 | EVELINE R SUAREZ | ▮▮▮ | ON FILE | NJ |
| 28 | NELSON E YNOA | ▮▮▮ | ON FILE | NJ |

SNICDRL (08/15)

**State National Insurance Company, Inc.**

| | |
|---|---|
| **Policy Number:** | DDM-159000006 |
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Named Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

## ADDITIONAL NAMED INSURED SCHEDULE

IT IS AGREED AND UNDERSTOOD THAT EFFECTIVE <u>11/26/2015</u>, ITEM 1 OF THE DECLARATIONS PAGE IS AMENDED TO ADD / ELIMINATE THE FOLLOWING ADDITIONAL NAMED INSUREDS AND THEIR MAILING ADDRESSES.   ALL RIGHTS AND OBLIGATIONS CONTAINED IN THE POLICY FORMS AND ENDORSEMENTS ARE APPLICABLE TO THESE INDIVIDUALS OR ENTITIES , UNLESS OTHERWISE STATED IN THIS SCHEDULE.  THE "COMMON CONDITIONS -- PARTS II AND III" OF COMMERCIAL AUTO FORM -- MCA 010 0612 REMAIN UNCHANGED AS RESPECTS THE RIGHTS OF, AND OUR OBLIGATIONS TO, THE FIRST NAMED INSURED.

| Name & Address | Name & Address |
|---|---|
| JERSEY RECREATION LLC<br>717-722 BROADWAY<br>Newark, NJ 07104 | Cardigan Commercial Auto Risk Purchasing Group, LLC<br>6230 Canoga Avenue<br>12th Floor<br>Woodland Hills, CA 91367 |

SNICANI (08/15)

**State National Insurance Company, Inc.**

| Policy Number: | DDM-159000006 |
|---|---|
| **Policy Term:** | 11/26/2015 to 11/26/2016 |
| **Named Insured:** | AMDC Recreation LLC JERSEY RECREATION LLC |
| **Agent:** | 0000098<br>RISK PARTNERS INC<br>709 STOKES ROAD SUITE 101<br>MEDFORD, NJ  08055<br>(609) 714-7760 |

# ADDITIONAL INTEREST SCHEDULE

**Premium Finance**
    **Name** First Insurance Funding
        P O Box 3306
        Northbrook, IL 60065

**Loss Payee for Vehicle #5**
    **Name** Advantage Funding Commercial Capital Corp
        1111 Marcus Ave
        Ste M27
        Lake Success, NY 11042

**Loss Payee for Vehicle #9**
    **Name** Northfield Bank
        1410 St Georges Avenue
        Hoboken, NJ 07030

**Loss Payee for Vehicle #10**
    **Name** TCF EQUIPMENT FINANCE INC
        11100 WAYZATA BLVD
        Minnetonka, MN 55305

**Loss Payee for Vehicle #12**
    **Name** TCF EQUIPMENT FINANCE INC
        11100 WAYZATA BLVD
        Minnetonka, MN 55305

**Loss Payee for Vehicle #13**
    **Name** Advantage Funding Commercial Capital Corp
        1111 Marcus Ave
        Suite M27
        Lake Success, NY 11042

**Loss Payee for Vehicle #23**
    **Name** TCF EQUIPMENT FINANCE INC
        11100 WAYZATA BLVD
        Minnetonka, MN 55305

**Lien Holder**
    **Name** Key Equipment Finance
        PO Box 4248
        Bellevue, WA 98009

**Loss Payee**
    **Name** Key Equipment Finance
        PO Box 4248
        Bellevue, WA 98009

**Loss Payee for Vehicle #15, 24, 25, 26, 27, 28, 29**
    **Name** Advantage Funding Commercial Capital Corp
        PO Box 1839
        Portland, OR 97207

**Loss Payee**
    **Name** All Points Capital Corp dba Capital One Equipment
        Leasing and Financing
        Broad Hollow Road
        Melville, NY 11747

# COMMERCIAL *AUTO* FORM – MCA 010 11 14

**YOUR POLICY INCLUDES:**
- The Declarations, Including Information About —
  - *You* and *Your* Business
  - Covered *Autos*
  - The Applicable Coverages
  - The Applicable Limits of Liability
  - Who *We* are, and *Your* Insurance Representative
- This Commercial *Auto* Form — MCA 010
- Additional Endorsements, if Applicable

**THIS INSURANCE FORM INCLUDES:**

| | ITEM | PAGE |
|---|---|---|
| **PART I** | • Covered *Auto* Descriptions | **2** |
| **PART II** | • Part II A — Main Liability Coverages | **3** |
| |   • Coverage A — Liability to Others | |
| |   • Coverage B — Medical Payments | |
| | • Part II B — Supplemental Coverages | **4** |
| | • Part II C — Liability Not Insured | **5** |
| | • Part II D — Special Liability Conditions, Including — | **7** |
| |   • Duties of *Insureds* | |
| |   • Limits of Liability | |
| **PART III** | • Part III A — Main Physical Damage Coverages | **8** |
| |   • Coverage F — Comprehensive | |
| |   • Coverage G — Collision | |
| |   • Coverage H — Towing | |
| | • Part III B — Supplemental Coverages | **8** |
| | • Part III C — Exclusions / Limitations | **9** |
| | • Part III D — Special Physical Damage Conditions, Including — | **10** |
| |   • Duties When *Loss* Occurs | |
| |   • How *Losses* Are Settled | |
| |   • Other Special Conditions | |
| **PARTS II AND III** | • Common Exclusions | **11** |
| | • Common Conditions, Including — | **12** |
| |   • Action or Suit Against *Us* | |
| |   • Cancellation / Termination | |
| |   • Concealment / Misrepresentation / Fraud | |
| |   • Coverage Territory | |
| |   • Examination / Premium Audit | |
| |   • Other Insurance | |
| |   • Recovery From Others | |
| |   • And Other Conditions | |
| | • Common Glossary | **14** |

**DEFINITIONS AND WORD MEANINGS**

Words shown in *italics* are defined for the purposes of this insurance in Glossaries: See Part III B.3.B., Common Exclusion 2.C, and the Common Glossary.

The Word "provisions" refers to all or part of the text of this insurance contract — including agreements, conditions, exclusions, limits, limitations, and all other terms.

The meaning of other words and phrases not specifically defined in the Glossaries are to be found in their relevant conventional definition based on consideration of the context in which they are used in this policy.

© 2014, MSO®, Inc.

# PART I • COVERED *AUTO* DESCRIPTIONS

**1.  COVERED *AUTO* SYMBOLS**

The following numerical symbols describe the types of *autos* that are covered *autos* for those coverages provided in this policy for which that symbol is shown in the Declarations.

**SYMBOL                       DESCRIPTION**

**1.**      **Any *Auto*.**

**2.**      **Owned *Autos* Only.**

Only those *autos you* own. This also includes *autos* that *you* newly acquire ownership of during the current policy term. For Liability Coverage, Symbol 2 also includes *trailers* not owned by *you* while attached to an *auto you* own.

**3.**      **Owned Private Passenger *Autos* Only.**

Only those private passenger *autos you* own. This also includes private passenger *autos* that *you* newly acquire ownership of during the current policy term.

**4.**      **Owned *Autos* Other than Private Passenger *Autos* Only.**

Only those *autos you* own that are not of the *private passenger type.* This also includes such *autos* that *you* newly acquire ownership of during the current policy term. For Liability Coverage, Symbol 4 also includes *trailers* not owned by *you* while attached to an *auto you* own.

**5.**      **Owned *Autos* Subject to No-Fault.**

Only those *autos you* own that are required to have "no-fault" benefits in the state where such *autos* are licensed or principally garaged. This also includes such *autos* that *you* newly acquire ownership of during the current policy term.

**6.**      **Owned *Autos* Subject to a Compulsory Uninsured Motorists Law.**

Only those *autos you* own that are required to have, and cannot reject, Uninsured Motorists Coverage in the state where such *autos* are licensed or principally garaged. This also includes such *autos* that *you* newly acquire ownership of during the current policy term.

**7.**      **Specifically Described *Autos*.**

Only those *autos* described in the "Schedule of Covered *Autos You* Own" in the Declarations for which a related premium charge is shown. For Liability Coverage, Symbol 7 also includes *trailers* not owned by *you* while attached to an *auto* described in such Schedule.

**8.**      **Hired *Autos* Only.**

Only those *autos you* borrow, hire, lease, or rent. This does not include any *auto you* borrow, hire, lease, or rent from: any of *your employees,* executive officers, partners; (if *you* are a partnership), or members (if *you* are a limited liability company) or members of their households.

**9.**      **Nonowned *Autos* Only.**

Only those *autos you* do not borrow, hire, lease, own, or rent that are used in connection with *your* business / operations. Symbol 9 includes *autos* owned by *your employees,* executive officers, partners, (if *you* are a partnership), or members (if *you* are a limited liability company) or members of their households but only while used in connection with *your* business / operations or personal affairs.

**2.  OWNED *AUTOS* ACQUIRED DURING THE POLICY TERM**

A.   If Symbols 1, 2, 3, 4, 5, or 6 are entered for a coverage in the Declarations, then *you* have that coverage for the remainder of the policy term for any *autos* of the type described by such symbol that *you* newly acquire.

B.   If Symbol 7 is entered for a coverage in the Declarations, then an *auto you* newly acquire will be a covered *auto* for that coverage only if:

**1.**   *We* already insure all *autos* that *you* own for that coverage, or the newly acquired *auto* replaces an *auto you* previously owned which was insured for that coverage; and

**2.**   *You* let *us* know within 30 days after acquiring the *auto* that *you* want *us* to insure it for that coverage.

**3.  CERTAIN *MOBILE EQUIPMENT*, TEMPORARY SUBSTITUTE *AUTOS*, AND *TRAILERS***

If Liability Coverage is provided by this policy, then the following vehicles are also covered *autos* for Liability Coverage:

**A.**   Any *auto* that *you* do not own while it is used with the permission of its owner as a temporary substitute for a covered *auto* that is out of use because of *loss* to it or its breakdown, repair, servicing, or destruction.

**B.**   *Mobile equipment* while being carried or towed by a covered *auto.*

**C.**   *Trailers* with a load capacity of 2,000 pounds or less that are designed primarily for travel on public roads.

# PART II A • MAIN LIABILITY COVERAGES

**1.   APPLICATION OF THIS INSURANCE (PART II)**

This insurance applies to liability arising out of covered *autos* designated in the Declarations to the extent covered in this policy. *We* have no obligation to provide any insurance or service, or pay any expense or sum, other than those specifically described as applicable and insured in this policy.

**2.   COVERAGE A • LIABILITY TO OTHERS**

**A.**   *We* will pay for the benefit of *insureds,* up to the applicable limit of liability (see Part II D) shown in the Declarations, those sums that *insureds* become legally liable to pay as damages because of *bodily injury* or *property damage* insured in this policy that is caused by an *accident* and results from the maintenance, ownership, or use of a covered *auto.*

Such *accident* must occur during the policy term and take place within the applicable coverage territory (see Common Conditions).

**B.**   *We* have no obligation to pay any damages not covered in this policy or in excess of *our* limit of liability (see Part II D) for any covered damages.

**C.   Who is an *Insured* — Coverage A**

For Coverage A, *insured* means the following:

**1.**   *You* for any covered *auto.*

**2.**   Anyone else while using with *your* permission a covered *auto* borrowed, hired, or owned by *you,* other than any of the following persons:

**a.**   The owner or anyone else from whom *you* borrow or hire a covered *auto,* and any of their agents or employees, is not an *insured.* However, this exception does not apply if such covered *auto* is a *trailer* attached to a covered *auto* owned by *you.*

**b.**   *Your employee* for a covered *auto* owned by that *employee* or by a member of such *employee's* household is not an *insured.*

**c.**   *Your* partner (if *you* are a partnership) for a covered *auto* owned by that partner or by a member of such partner's household is not an *insured.*

**d.**   A member (if *you* are a limited liability company) for a covered *auto* owned by that person or by a member of such person's household is not an *insured*

**e.**   Anyone while moving property to or from a covered *auto* is not an *insured.* However, this exception does not apply to *your employees* or

partners, or to a lessee or borrower or any employee of such lessee or borrower.

**f.**   Anyone using a covered *auto* while such person is working in a business that parks, repairs, sells, services, or stores *autos* is not an *insured.* However, this exception does not apply if such business is *yours.*

**3.**   Anyone liable for the conduct of an *insured* (as described in preceding Paragraphs 1 and 2) but only to the extent of that liability.

**3.   COVERAGE B • MEDICAL PAYMENTS**

**A.**   *We* will pay, up to the applicable limit of liability (see Part II D) shown in the Declarations, the reasonable necessary medical expenses, incurred by an *insured,* arising out of an *accident.* Such expenses must be both incurred and reported to *us* by *you* or the coverage beneficiary within three years from the date of such *accident.* The *accident* must occur during the policy term and take place within the applicable coverage territory (see Common Conditions).

Fault or legal liability is not a condition for such payment (and *our* payment is not an admission of liability by any *insured);* however, *we* pay medical expenses only for *bodily injury* not otherwise excluded or uninsured under this policy.

**B.**   Medical expenses means expenses for: ambulance, dental, funeral, hospital, medical, professional nursing, surgical, or X-ray services; prosthetic devices; drugs; and surgical supplies.

**C.   Who is an *Insured* — Coverage B**

For Coverage B, *insured* means the following:

**1.**   *You* while *occupying* or, while a pedestrian, when struck by any *auto.*

**2.**   If *you* are an individual, any *family member* while *occupying* or, while a pedestrian, when struck by any *auto.*

**3.**   Anyone else while *occupying* a covered *auto* or a temporary substitute for a covered *auto* that is out of use because of *loss* to it or its breakdown, repair, servicing, or destruction.

If no limit is shown in the Declarations, then Coverage B does not apply under this policy.

# PART II B • SUPPLEMENTAL COVERAGES

**The following coverages do not extend or modify any provisions in this policy, including *our* Limits of Liability or any applicable Exclusions, except to the extent specifically described.**

1. **DEFENSE COVERAGE**
   A. With counsel of *our* choice, *we* will defend suits (civil proceedings) against *insureds* seeking damages covered by this insurance. *We* have no duty to investigate any claim, defend, or provide for a defense for any *insured:*
      1. In connection with either suits seeking damages not covered by this policy or allegations within a suit which are not covered by this policy; or
      2. When the applicable limit of liability is used up in payment of judgments or settlements.

   B. *We* may investigate and settle any claim or suit as *we* deem such to be reasonable.

   C. *We* assume the following costs and expenses in a suit defended by *us:*
      1. All costs incurred by *us.*
      2. The interest which accrues after entry of a judgment, but only until that time when *we* pay, offer to pay, or deposit in court that part of the judgment within *our* limit of liability.
      3. The prejudgment interest awarded against any *insured* on that part of the judgment *we* pay. However, if *we* offer to pay *our* applicable limit of liability under this policy, *we* will not pay any prejudgment interest which is based on the period of time that follows *our* offer.
      4. Costs taxed against the *insured.* However, costs taxed against the *insured* do not include attorney expenses or fees.
      5. Costs of appeal bonds or bonds to release attachments, for that amount of the bond within *our* applicable limit of liability. *We* need not furnish or secure such bonds.
      6. Up to $250 for costs of bail bonds, resulting from *accidents* including related traffic law violation covered by this insurance. *We* need not furnish or secure such bonds.
      7. The reasonable expenses incurred by the *insured* at *our* request, as well as earnings lost up to $250 per day because of absence from work at *our* request.

   Suit includes alternative dispute resolution proceedings to which an *insured* either must submit or may choose to submit (but only if done with *our* prior written consent).

2. **CONTRACTUAL COVERAGE**
   A. Coverage A is extended to include *your* liability to pay damages to others (third parties) because of *bodily injury* or *property damage* — to the extent otherwise insured by this policy — arising out of *your* expressed assumption of the liability of another *(your)* indemnitee) under the oral or written contracts described in Paragraph B.

This Supplemental Coverage applies only to contracts made in connection with *your* business/operations covered by this policy and, then, solely to *bodily injury* or *property damage* which occurs subsequent to execution of the covered contract.

   B. **Insured Contracts**
   This Supplemental Coverage applies to the following oral or written contracts:
      1. Agreements to indemnify a municipality as required by law or ordinance. This does not include agreements made in connection with work for a municipality: but the assumption of tort liability of another for such work is included under Item 6.
      2. Easements. This does not include easements involving work on, or within 50 feet of, a railroad, nor is the assumption of tort liability for such included under the following Paragraph 6.
      3. Leases of premises.
      4. Sidetrack agreements.
      5. That part of any contract involving the lease or rental of any *auto* to *you* or *your employees.* This does not include any obligation to pay for *property damage* to any *auto* leased or rented to *you* or *your employees.*
      6. That part of other contracts not as described in the preceding Paragraphs 1 thru 5, in which *you* have expressly assumed the tort liability (liability imposed by law in the absence of contract) of another.

   C. **Contracts Not Insured**
   This Supplemental Coverage does not apply to that part of any contract that:
      1. Holds a person or organization that is engaged in the business of transporting property by *auto* for hire harmless for *your* use of a covered *auto* over a route or territory such person or organization is authorized to serve by a public authority.
      2. Pertains to the lease, loan, or rental of an *auto* with a driver to *you* or *your employees.*

**If MCA 501 is listed in the Declarations, then coverage applies solely to those written contracts that *you* furnish to *us* within 60 days of their execution.**

**If MCA 502 is listed in the Declarations, then coverage applies solely to written contracts.**

3. **INDIVIDUAL *NAMED INSURED* COVERAGE**
   If *you* are an individual, Coverage A is extended as follows:
   A. While any *private passenger type auto you* own is a covered *auto* for Coverage A:
      1. The Who is an *Insured* provision (Item C under Part II A — Main Liability Coverages) also includes *family members* for such *autos* and for any

MCA 010 11 14

*auto* available or furnished for *your* or any *family member's* regular use.

2. Any *auto* not owned by *you* is a covered *auto* while being used by *you* or any *family member* other than the following:

    **a.** Any *auto* owned by any *family member.*

    **b.** Any *auto* available or furnished for *your* or any *family member's* regular use.

    **c.** Any *auto* used by *you* or any *family member* while such person is working in a business that parks, repairs, sells, services, or stores *autos.*

    **d.** Any *auto*, other than a *private passenger type*, that is used by *you* or any *family member* while such person is working in any other business or occupation.

3. The Pollution / Environmental Damage Exclusion under Part II C — Liability Not Insured does not apply to any covered *auto* that is a *private passenger type.*

**B.** Paragraph D of the *Employee*, Employment and Related Injury Exclusion does not apply to *bodily injury* to *your* or any *family member's* fellow *employees.*

4. **OUT OF STATE COVERAGE**

    While a covered *auto* is within the coverage territory but out of the state where it is licensed, *we* will do the following:

    **A.** Increase the Coverage A limit of liability under Part II D to meet the limits required by any compulsory insurance or financial responsibility law that applies in the jurisdiction where such covered *auto* is being used. However, this extension does not apply to any limits required by any law governing motor carriers of passengers or property.

    **B.** Provide the minimum amounts and types of other coverages, such as a first party benefit or no-fault coverage, required for an out-of-state *auto* by the jurisdiction where such covered *auto* is being used.

    However, *we* will not pay anyone more than once for the same elements of loss because of these extensions of coverage.

# PART II C • LIABILITY NOT INSURED

*We* **do not provide insurance for any sort of costs, damages, expenses, or liability, directly or indirectly, wholly or partially, aggravated by, caused by, or resulting from any of the following, even if an** *accident* **otherwise covered contributes to such concurrently or in any sequence — except to the extent otherwise specifically described and provided for in this policy.**

1. **CARE, CONTROL, OR CUSTODY EXCLUSION**

    *We* do not insure *property damage* to property in the care, control, or custody of the *insured* or to property owned or transported by the *insured*. This does not apply to liability assumed under a written sidetrack agreement.

2. **COMPLETED OPERATIONS EXCLUSION**

    *We* do not insure *bodily injury* or *property damage* arising out of *your work* after such work has been abandoned or completed.

    *Your work* is deemed completed at the earliest one of the following times:

    **A.** When all the work called for in *your* contract is completed.

    **B.** When all the work called for in *your* contract at the job location is completed if *your* contract calls for work at more than one location.

    **C.** When that part of the work at a job location is put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that needs final correction, maintenance, repair, replacement, or service — but is otherwise completed — is deemed completed.

3. **CONTRACTUAL LIABILITY EXCLUSION**

    *We* do not insure *bodily injury* or *property damage* for which the *insured* is liable to pay damages because of the assumption of liability for such in an implied, oral, or written agreement or contract. However, refer to Item 2, Contractual Coverage, under Part II B - Supplemental Coverages.

To the extent that Item 2, Contractual Coverage, under Part II B – Supplemental Coverages, otherwise applies, *we* do not insure under such coverage any *bodily injury* or *property damage* which first occurs prior to execution of the agreement or contract.

This Exclusion does not apply to liability for damages, otherwise insured in this policy, that the *insured* has in the absence of contract.

4. *EMPLOYEE*, **EMPLOYMENT, AND RELATED INJURY EXCLUSIONS**

    **A.** *We* do not insure any obligations of any *insureds* under a disability benefit, unemployment compensation, workers' compensation, or similar law.

    **B.** *We* do not insure *bodily injury* to any of *your employees* arising out of and in the course of:

    **1.** Employment by *you;* or

    **2.** Performing duties related to the conduct of *your* business / operations.

    **C.** *We* do not insure *bodily injury* sustained by the brother, child, parent, sister, or spouse of *your employees* arising out of any injury described in the preceding Paragraph B.

    **D.** With respect to any *employee* who is an *insured* in this policy:

    **1.** *We* do not insure bodily injury to a fellow employee, caused by such insured while in the course of employment by you.

    **2.** *We* will not settle any claims or suits seeking damages to the relatives of any fellow employee caused by the actions of such insured while in the course of employment by *you*. Relatives include but

are not limited to: brothers, children, life partners, parents, or sisters.

**E.** *We* do not insure any obligation to share damages with, or repay, others who must pay damages because of any *bodily injury* described in B, C and D, above.

Preceding Paragraphs B thru E apply whether the claim or suit is brought by *your employees* or by any others or whether *you* are liable as an employer or in any other capacity. However, Paragraph B does not apply to liability assumed under a contract covered under Supplemental Coverage 2 or to domestic *employees* not eligible for workers' compensation benefits.

**5. ENDANGERMENT OR HARM EXCLUSION**
*We* do not insure *bodily injury* or *property damage* which is a consequence of an *insured's* willfully act or knowing endangerment.

**6. EXPLOSIVES EXCLUSION**
*We* do not insure *bodily injury* or *property damage* resulting from the explosion of explosives that *you* make, sell, or transport.

**7. HANDLING OR MOVEMENT OF PROPERTY EXCLUSION**
*We* do not insure *bodily injury* or *property damage* resulting from the handling or movement of any property as follows:
**A.** Before such property is moved from the place where it is accepted for movement into or onto the covered *auto.*

**B.** After such property is moved from the covered *auto* to the place where it is finally delivered.

**C.** By any mechanical device which is not attached to the covered *auto*, other than a hand truck.

**8. OPERATIONS OF EQUIPMENT EXCLUSION**
**A.** *We* do not insure *bodily injury* or *property damage* resulting from the operation of any of the following devices or equipment permanently attached to an *auto:*
 **1.** Air compressors, generators, or pumps; building cleaning, geophysical exploration, lighting, spraying, welding, or well servicing equipment.

 **2.** Cherry pickers and similar devices used to raise / lower workers.

**B.** *We* do not insure *bodily injury* or *property damage* resulting from the operation of any device permanently attached to a vehicle that would qualify as *mobile equipment,* under the definition of *mobile equipment,* if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

**9. POLLUTION / ENVIRONMENTAL DAMAGE EXCLUSION**
**A.** *We* do not insure *bodily injury* or *property damage* arising out of the actual, alleged, or threatened discharge, dispersal, emission, escape, flowing, leakage, migration, release, or seepage of *pollutants* or other similar forms of environmental damage, regardless of where or how such may take place, as follows:

 **1.** That are, or that are contained in any property that is:
 **a.** Being handled, transported, or towed by, or handled for movement into, onto or from, the covered *auto;*

 **b.** Otherwise in the course of transit by or on behalf of the *insured;* or

 **c.** Being disposed of, processed, stored, or treated in or upon the covered *auto.*

 **2.** Before the *pollutants* or any property in which the *pollutants* are contained are moved from the place where they are accepted by the *insured* for movement into or onto the covered *auto.*

 **3.** After the *pollutants* or any property in which the *pollutants* are contained are moved from the covered *auto* to the place where they are finally abandoned, delivered, or disposed of by the *insured.*

**B.** Paragraph A of this Exclusion does not apply to exhaust fumes, fluids, fuels, lubricants, or other similar *pollutants* that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of a covered *auto* or its parts, provided:
 **1.** The discharge, dispersal, emission, escape, flowing, leakage, migration, release, or seepage of the *pollutants* is from an *auto* part designed by its manufacturer to dispose of, hold, receive, or store such *pollutants;* and

 **2.** The *bodily injury* or *property damage* does not result from the operation of any of the following devices or equipment permanently attached to an *auto:*
 **a.** Air compressors, generators, or pumps; building cleaning, geophysical exploration, lighting, spraying, welding, or well servicing equipment.

 b. Cherry pickers and similar devices used to raise / lower workers.

Paragraphs A. 2 and 3 of this Exclusion do not apply to *accidents* occurring away from premises owned by, leased or rented to an *insured* with respect to *pollutants* that are not in or upon a covered *auto,* provided:
 **1.** The *pollutants* or any property in which the *pollutants* are contained are damaged, overturned, or upset as a result of the maintenance, operation, or use of a covered *auto;* and

 **2.** The discharge, dispersal, emission, escape, flowing, leakage, migration, release, or seepage of the *pollutants* results directly from such damage, overturn, or upset.

**C.** *We* do not insure under this policy any cost, expense, liability, or *loss* arising out of any of the following:
 **1.** Any demand, directive, order, or request that any *insured* or others clean up, contain, detoxify, monitor, neutralize, remove, test for, treat, or in any way assess the effects of or respond to *pollutants,* or

 **2.** Any claim or suit by, or on behalf of, any governmental authority for damages or

reimbursement because of cleaning up, containing, detoxifying, monitoring, neutralizing, removing, testing for, treating, or in any way assessing the effects of or responding to *pollutants.*

Paragraph C does not apply to such pollution costs or expenses arising out of those *accidents* that are covered (not excluded) under Paragraph B of this Exclusion.

Coverage applies only if there is either *bodily injury* or *property damage* covered by this policy that results from the same *accident.*

**10. PROFESSIONAL ACTIVITIES EXCLUSION**
*We* do not insure *bodily injury* or *property damage* arising out of the following:
**A.** The rendering or failure to render any sort of professional advice, product, or service, or the furnishing of food or drink with such.

**B.** Handling of corpses.

**11. RACING EXCLUSION**
*We* do not insure *bodily injury* or *property damage* arising out of any covered *auto* while being used in a prearranged demolition, racing, or speed contest or stunting activity, including preparation or practice for such.

**12. SALES EXCLUSION**
With respect to a covered *auto* that is used as a mobile showroom or store, *we* do not insure *bodily injury* or *property damage* resulting from any condition, handling, or use of any item that the *insured* distributes, manufactures, rents, or sells when such injury or damage occurs after the *insured* has relinquished possession of the item to others.

**13. WRONG DELIVERY OF LIQUID PRODUCTS EXCLUSION**
*We* do not insure *bodily injury* or *property damage* resulting from the following if such injury or damage occurs after the delivery has been completed:
**A.** The delivery of any liquid to the wrong address.

**B.** The delivery of any liquid into the wrong receptacle.

**C.** The delivery of one liquid instead of another.

Delivery is deemed completed even if further correction, maintenance, repair, replacement, or service is necessary because of such wrong delivery.

**THE FOLLOWING ADDITIONAL EXCLUSIONS APPLY ONLY TO COVERAGE B**

**14. *AUTO* BUSINESS EXCLUSION**
*We* do not insure medical expenses in connection with *bodily injury* to any *insured* while working in a business that parks, repairs, sells, services, or stores *autos.* But this Exclusion does not apply if such business is *yours.*

**15. OTHER VEHICLE EXCLUSION**
*We* do not insure medical expenses in connection with *bodily injury* to:
**A.** *You* or any *family member* while *occupying* or, while a pedestrian, when struck by any vehicle owned by *you* or furnished or available for *your* regular use that is not a covered *auto.*

**B.** Any *family member* while *occupying* or, while a pedestrian, when struck by any vehicle owned by or furnished or available for the regular use of any *family member* that is not a covered *auto.*

**16. USED AS A PREMISES EXCLUSION**
*We* do not insure medical expenses in connection with *bodily injury* to any *insured* while *occupying* a vehicle that is located for use as a premises.

**17. USED WITHOUT PERMISSION EXCLUSION**
*We* do not insure medical expenses in connection with *bodily injury* to any person while using a vehicle without a reasonable belief that such person is permitted to use such vehicle.

**18. *YOUR* MEDICAL SERVICES / GENERAL MEDICAL EXCLUSIONS**
**A.** *We* do not insure medical expenses in connection with medical services that are provided by *you, your employees,* or others under contract to *you* to provide medical services, including first aid to others at the time of an *accident.*

**B.** *We* do not insure any medical expenses in connection with any *bodily injury* otherwise excluded in this policy.

# PART II D • SPECIAL LIABILITY CONDITIONS

**1. DUTIES OF *INSUREDS* — WHAT TO DO IN CASE OF *ACCIDENT,* CLAIM, INJURY, OR SUIT**
*You,* other *insureds,* and other coverage beneficiaries must do all of the following things:
**A.** Immediately notify *us* of all relevant circumstances relating to a claim or any incident which may result in a claim, with all necessary information. For example: who *you* are; the time, place, and circumstances of the *accident* or injury; the names and addresses of injured persons and witnesses.

**B.** Immediately send *us* all bills, documents, notices, papers, or summonses related to any claim or suit

brought against any *insured* or to any medical expense claims.

**C.** Cooperate with *us* in matters relevant to the claim or suit. Assist *us* in: conducting suits, including by attending hearings and trials and giving evidence; enforcing any *insured's* rights of contribution or indemnity against others; investigating *accidents;* making settlements; obtaining records (or other information) or the attendance of witnesses.

**D.** Submit to examination and provide statements under oath and sign and swear to such. If more than one person is examined, *we* reserve the right to examine and

receive statements from each person separately and out of the presence of the others. *We* also reserve the right to video record any examination.

**E.** Refrain from voluntarily making payments, assuming obligations, or incurring defense, investigative, or any other expenses — unless with *our* specific written authorization to do so (otherwise such undertakings will be at the *insured's* own expense and *we* will not pay for them).

**F.** With regard to Coverage B, coverage beneficiaries must, as *we* may reasonably require: provide written proof of claim (under oath, if required); submit, at *our* expense, to physical examinations by physicians of *our* choice; and authorize *us* to obtain medical records.

**Failure to comply with these (or other conditions) can alter or void *our* obligations under this policy.**

**2.  LIMITS OF LIABILITY**
*Our* maximum total liability payable for the sum of all damages, injury, liability and loss covered by this policy is limited as follows — regardless of the number of covered *autos, insureds,* premiums paid, vehicles involved in the *accident,* or claims made or suits brought by one or more persons or organizations. *Our* obligation to make payments ceases when the applicable limit is used up in payment of judgment or settlements.

    **A.**  *Accident* **Limits — Coverage A**
    *Our* maximum limit of liability payable under Coverage A in any one *accident* is the *accident* limit shown in the Declarations.

    **B.**  *Accident* / **Per Person Limits — Coverage B**
    *Our* maximum limit of liability payable under Coverage B for any one person in any one *accident* is the "per person" limit shown in the Declarations.

    **C.**  **Application of Limits**
    **1.** The limits described above apply separately to each consecutive 12 month period, beginning with the policy term shown in the Declarations.

    **2.** If the policy is originally issued for more than 12 consecutive months with a terminal period less than 12 months, the limits apply separately to: each consecutive 12 month period; the terminal period. For example; if 27 months: 12 months, 12 months; 3 months. However, if extended after issuance, the terminal period is included in the last 12 month period. For example, 12 months and 15 months.

No one will be entitled to receive duplicate payments for the same elements of damages, expenses, or loss under this policy and any Uninsured or Underinsured Motorists Coverage added to this policy.

**3.  OTHER CONDITIONS**
    **A.** Except for the limits of liability and any duties / rights assigned to the *first named insured,* this insurance applies separately: to each *insured* against whom claim is made or suit is brought; to each *named insured* as if the only *named insured.*

    **B.** Bankruptcy of the *insured* does not relieve *us* of *our* obligations under this policy.

# PART III A • MAIN PHYSICAL DAMAGE COVERAGES

**INSURING AGREEMENT**
**A.** *We* provide insurance for those of the following coverages for which a related limit of liability and related premium charge is shown in the Declarations subject to all applicable provisions.

**B.** Unless otherwise specifically provided in this policy, this insurance applies only to *loss* that takes place within the applicable coverage territory (see Common Conditions) during the current policy term.

**C.  Insuring Agreement Qualification**
The following Coverages as described below are subject to certain Exclusions and Limitations, including the General Exclusions and Part III D.

**COVERAGE F — COMPREHENSIVE**
*We* pay for *loss* to a covered *auto,* including its equipment, under Comprehensive Coverage resulting from any cause of *loss* other than the following:

**A.** The covered *auto's* collision with another object.

**B.** The covered *auto's* overturn.

**C.** Causes of *loss* otherwise excluded or limited in this policy.

**COVERAGE G — COLLISION**
*We* pay for *loss* to a covered *auto,* including its equipment, under Collision Coverage resulting from the following:
**A.** The covered *auto's* collision with another object.

**B.** The covered *auto's* overturn.

**COVERAGE H — TOWING**
*We* pay for towing and labor expenses incurred when a covered *private passenger type auto* is disabled. The labor expenses are only for labor performed at the place of disablement.

# PART III B • SUPPLEMENTAL COVERAGES

**SUPPLEMENTAL COVERAGES — ADDITIONAL CONDITIONS**
*We* provide the following Supplemental Coverages as extensions of the main coverages

but only when, and then to the extent that, such main coverages apply under this policy.

These Supplemental Coverages do not modify or waive any provisions of this policy except to the extent specifically

described; and such are subject to all underlying provisions applicable in this policy, except to the extent specifically modified in Part III B.

1. **CERTAIN      ELECTRONIC      EQUIPMENT COVERAGE**

   Coverage is extended to the following equipment:

   **A.** Equipment designed solely for the reproduction of sound or video or as a global positioning system (GPS) and accessories used with such equipment, provided such equipment is permanently installed in the covered *auto* at the time of the *loss.*

   **B.** Such equipment that is removable from a housing unit which is permanently installed in the covered *auto* at the time of *loss,* and such equipment is designed to be solely operated in or upon the covered *auto* by use of the power from the *auto's* electrical system.

   **C.** Any other electronic equipment that is:

   **1.** Necessary for the normal operation of the covered *auto* or the monitoring of the covered *auto's* operating system; or

   **2.** An integral part of the same unit housing any sound reproducing equipment described in Paragraph A above and permanently installed in the opening of the dash or console of the covered *auto* normally used by the manufacturer for installation of a radio.

2. **FALLING      OBJECTS,      GLASS      BREAKAGE, HITTING AN ANIMAL / BIRD**

   If the damaged covered *auto* is insured for Comprehensive Coverage under this policy, *we* will pay for the following damage under Comprehensive Coverage:

   **A.** Glass breakage.

   **B.** *Loss* caused by falling objects or missiles.

   **C.** *Loss* caused by hitting an animal or bird.

   However, *you* may elect to have glass breakage that results from a covered *auto's* collision or overturn settled as a Collision Coverage *loss.*

3. **INDIVIDUAL *NAMED INSURED* COVERAGE**

   **A.** If *you* are an individual, coverage is extended as follows:

   **1.** While any *private passenger type auto you* own

is a covered *auto* for physical damage coverage, a nonowned *auto* is also a covered *auto* for such coverage.

   **2.** *Our* maximum limit of liability for *loss* to a nonowned *trailer* under Paragraph 1 above is $500.

   **B.** **Glossary**

   As used in this coverage extension, nonowned *auto* means any *private passenger type auto,* pickup or van type truck, or *trailer,* that is not owned by, or available or furnished for the regular use of, *you* or a *family member* while such vehicle is being operated by, or in the custody of, *you* or a *family member*.

4. **TRANSPORTATION EXPENSE COVERAGE — ADDITIONAL INSURANCE**

   **A.** *We* pay necessary reasonable transportation expenses that *you* incur because of the total theft of the insured *private passenger type auto* that is insured for Comprehensive Coverage under this policy.

   **B.** *Our* maximum liability per occurrence under this Supplemental Coverage is $600 subject to a maximum $20 per day limit. *We* pay only for such expenses incurred during the period that begins 48 hours following the theft and ends when the covered *auto* is either returned to use or *we* pay for its *loss.* The described period is not limited by expiration of the policy term.

5. **HIRED AUTO LOSS OF USE COVERAGE – ADDITIONAL INSURANCE**

   If Physical Damage Coverage is provided for hired autos by this policy:

   **A.** *We* will pay necessary reasonable expenses for which an *insured* becomes legally liable to pay for the loss of use an *auto* borrowed, hired, leased or rented without a    driver under a written contract or agreement. Such loss of use must result from damage caused by a   cause of *loss* not otherwise excluded or limited in this policy.

   **B.** *Our* maximum liability per occurrence under this Supplemental Coverage is $600 subject to a maximum $20 per day limit. The described period is not limited by expiration of the policy term.

---

# PART III C • EXCLUSIONS / LIMITATIONS

*We* **do not cover the following property or** *loss* **except to the extent otherwise specifically provided for in this policy.**

1. **ELECTRONIC      EQUIPMENT,      DISKS,      TAPES EXCLUSIONS**

   *We* do not insure *loss* to the following:

   **A.** Any electronic equipment, that receives or sends audio, data, or visual signals. This includes any accessories used with such equipment.

   However, this exclusion does not apply to electronic equipment that is permanently installed in the auto or removable from a housing unit which is permanently installed in the covered *auto*.

Refer to Certain Electronic Equipment Coverage in Supplemental Coverages under Part III B.

   **B.** Cassette tapes, compact disks, or other media devices designed for use with electronic audio, data, or visual equipment.

   **C.** Equipment designed or used to detect, jam, or locate radar or any other speed measurement devices.

2. **FARM EQUIPMENT AND TRACTORS EXCLUSION**

   For any covered *auto* that is farm equipment, machinery, or a tractor, *we* do not insure *loss* to the following:

**A.** Any other equipment that can be transported by such covered *auto*. This does not apply to such equipment furnished by its manufacturer as part of the covered *auto's* delivered price or if such is described in this policy as a covered *auto*.

**B.** Stationary equipment that can be powered by the covered *auto*.

### 3. RACING EXCLUSION

*We* do not insure *loss* to any covered *auto* while being used in a prearranged demolition, racing, or speed contest or stunting activity, including preparation or practice for such.

### 4. WEAR, TEAR AND OTHER SPECIFIED CAUSES OF *LOSS* EXCLUSIONS

**A.** *We* do not insure *loss* caused by or resulting from any of the following:

**1.** Wear and tear; corrosion; decay or deterioration; deficiency, error, or omission in design, materials,

plans, or workmanship; dry or wet rot; electrical or mechanical breakdown; freezing; *fungi*, mold, spores, mildew, bacterium, or other natural growth; inherent vice (a customary characteristic of the property); latent defect (an original condition or fault leading to loss); rust.

**2.** Blowouts, punctures, or other road damage to tires.

However, if *loss* otherwise covered under this insurance:

**1.** Ensues as a result of a *loss* described in the preceding Paragraphs A.1 or 2, *we* insure such resulting *loss*; or

**2.** Causes a loss described in the preceding Paragraphs A.1 or 2, we insure such resulting loss.

### 5. DIMINISHED VALUE EXCLUSION

*We* do not insure any *diminution in value* to any covered *auto*.

---

# PART III D • SPECIAL PHYSICAL DAMAGE CONDITIONS

### 1. DUTIES WHEN *LOSS* / DANGER OF *LOSS* OCCURS

*You*, other *insureds*, and other coverage beneficiaries must do all of the following things:

**A. Report the *Loss***

Immediate notify *us* of any *loss*. Also, immediately notify the police in case of theft, vandalism, or other violation of law. As soon as possible, give *us* a description of how, when, and where the *loss* occurred.

**B. Protect Property**

Protect the covered *auto* if in imminent danger from a covered cause of *loss* or, if *loss* has occurred, from further *loss*. *We* cover the reasonable necessary expenses that *you* incur for such immediate safeguards.

**C. Cooperation on the *Loss***

As often as *we* may reasonably request / require:

**1.** Allow *us* to examine and inspect the covered *auto* and any records proving the *loss* before its repair or disposition.

**2.** Submit to examination and provide statements under oath and sign and swear to such. If more than one person is examined, *we* reserve the right to make such examination of each person out of the presence of the others. *We* also reserve the right to video record any examinations.

**3.** Otherwise cooperate with *us* in the investigation / settlement of the claim.

**Failure to comply with these (or other conditions) can alter or void *our* obligations under this policy.**

### 2. HOW *LOSSES* ARE SETTLED

**A. Limit of Liability**

**1. Coverages F & G**

*Our* maximum liability for *loss* in one *accident* is the least of the following amounts:

**a.** The *actual cash value* of the damaged or stolen property at the time of *loss;*

**b.** The cost of repairing or restoring the damaged property with like materials of comparable quality; or

**c.** The cost to replace the damaged or stolen property with like property of comparable quality.

**2. Coverage H**

*Our* maximum liability for incurred costs for any one disablement is the limit shown in the Declarations.

**B. Deductible**

*We* are liable for *loss* to each covered *auto* only when the *loss* is in excess of the Deductible amount shown in the Declarations, and then only on the amount of *loss* less the deductible amount.

The Deductible does not apply under Comprehensive Coverage to any *loss* caused by fire or lightning.

**C. Appraisal**

**1.** If *you* and *we* do not agree on the amount of the *loss* either one can require that the value of the items in dispute be set by appraisal. Within 30 days of receipt of a written demand for appraisal, each party is to select a competent and disinterested appraiser.

Each party is to then notify the other of the appraiser selected.

**2.** The two appraisers are to select a competent and disinterested umpire. If the appraisers are unable to agree upon an umpire within fifteen days, *you* or *we* may petition a judge of a Court of Record to select an umpire.

**3.** The appraisers are to reach a mutual agreement on the value of the items in dispute. If the appraisers fail to agree within a reasonable time, they are to submit their differences to the umpire. Written agreement signed by any two of these three persons

MCA 010 11 14

constitutes settlement on the items in dispute.

**4.** Each appraiser is paid by the party selecting the appraiser. All other expenses of the appraisal are paid equally by *you* and *us.*

**5.** If *we* agree to appraisal, *we* specifically retain *our* right to deny the claim.

**D.** *Our* **Liability and Satisfaction of** *Your Loss*

If the maximum liability payable by *us* on a *loss,* as determined in this policy, does not fully satisfy *your loss,* than *you* must either seek insurance that may be provided by others for the difference or otherwise absorb the unsatisfied portion of the *loss yourself.*

**E.** *Our* **Options in Settling** *Losses*

**1.** *We* may pay for the *loss* in money.

**2.** *We* may repair or replace all or any part of the damaged or stolen property as provided for in this policy, or take all or any part of such property at a mutually agreed, or appraised, value.

**3.** If any stolen property is recovered, *we* may return the stolen property, at *our* expense. *We* will also pay for any damage that results to the stolen property from the theft.

**4.** *We* may settle the claim with *you,* any *loss* payee named in this policy, or others legally entitled to receive payment. If the claim applies to property of others, *we* have the right to adjust the *loss* with the owners of the property. Satisfaction of their claim is also satisfaction of *your* claim as to such property.

**3.** *LOSS* **PAYABLE**

**A.** *We* will pay *you* and the *loss* payee named in this policy, to the extent of their interest, for *loss* to a covered *auto.* However if *loss* results from conversion, embezzlement, or secretion on *your* part, this insurance will not cover the interest of the *loss* payee.

**B.** If *we* cancel this policy, such cancellation ends this agreement with respect to the *loss* payee's interest. *We* will mail or send to the *loss* payee the same advance notice of cancellation *we* send to the *first named insured.*

**C.** If *we* make any payments to the *loss* payee, *we* will obtain such *loss* payee's right of recovery against any other party.

**4.** **NO BENEFIT TO BAILEE**

This insurance does not apply to the benefit of any others having custody of covered property. Any assignment to such persons or organizations has no standing under this policy.

---

# COMMON EXCLUSIONS • PARTS II AND III

**The following includes similar type Exclusions applicable to Parts II and III. These common Exclusions apply in addition to those shown under the separate coverage parts of this policy.** *We* **provide no insurance for any damages, expenses, liability, or** *loss* **directly or indirectly, wholly or partially, aggravated by, consisting of, or resulting from the following — even if** *loss* **or an** *accident* **otherwise covered contributes to such concurrently or in any sequence.**

**PART II**

**The following apply to Part II**

**1.** **GOVERNMENT/LEGAL / WAR**

**A.** Any act or condition of war (declared or not), civil war, invasion, insurrection, rebellion, revolution, or seizure of power, including acts done to defend against any such act or condition, whether actual or expected.

**B.** Knowing violation of penal law or ordinance committed by, or with the consent of, any *insured.* Statutory fines or liability. Exemplary or punitive damages. Illegal trade.

**2.** **NUCLEAR ENERGY**

**A.** With respect to Coverage A, *we* do not insure *bodily injury* or *property damage* as follows:

**1.** With respect to which an *insured* in this policy is also an insured under any nuclear energy liability policy (or would have been an insured under such but for its termination upon exhaustion of its limits).

**2.** Resulting from the *hazardous properties* of *nuclear material,* with respect to which:

**a.** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendments, or

**b.** The *insured* is (or would be if this policy did not exist) entitled to indemnity from the United States of America or its agencies under any agreement entered into by the United States of America or its agencies.

**3.** Resulting from the *hazardous properties* of *nuclear material,* if:

**a.** The *nuclear material* is at, or is discharged or dispersed from, any *nuclear facility* owned by or operated by or on behalf of any *insured,* or

**b.** The *nuclear material* is contained in *spent fuel* or *waste* at any time disposed of, handled, possessed, processed, stored, transported, or used by or on behalf of any *insured.*

**4.** The furnishing by any *insured* of equipment, materials, parts, or services in connection with the construction, maintenance, operation, planning, or use of any *nuclear facility:* but if such facility is located within the United States of America, its possessions or territories, or Canada, this applies only to *property damage* to such facility and property located at such facility.

**B.** With regard to Coverage B, *we* do not insure medical expenses in connection with *bodily injury* resulting

from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

**C.  Glossary**
The following special definitions apply to this Exclusion:

**1.**  *Hazardous Properties* include explosive, radioactive, or toxic properties.

**2.**  *Nuclear Facility* means any of the following:
    **a.**  Any *nuclear reactor;*

    **b.**  Any equipment or device designed or used for: separating the isotopes of uranium or plutonium; processing or utilizing *spent fuel;* handling, processing or packaging *waste;*

    **c.**  Any device or equipment used for alloying, fabricating, or processing of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such device or equipment is located consists of, or contains more than, 25 grams of plutonium or uranium - 233, or any combination of such materials, or more than 250 grams of uranium - 235;

    **d.**  Any basin, excavation, place, premises, or structure prepared for, or used for, the storage or disposal of *waste;* or

    **e.**  The site on which any of the foregoing property is located, all operations conducted on such site, and all premises used for such operations.

**3.**  *Nuclear Material* means *source, special nuclear,* or *by-product material.*

**4.**  *Nuclear Reactor* means any apparatus designed or used: to sustain nuclear fission in a self-supporting chain reaction; to contain a critical mass of fissionable material.

**5.**  *Property Damage* also includes all forms of radioactive contamination of property.

**6.**  *Source Material, Special Nuclear Material,* and *Byproduct Material* have the meanings given them in the Atomic Energy Act of 1954, or any amendments.

**7.**  *Spent Fuel* means any fuel component or element, whether solid or liquid, which has been either used in, or exposed to radiation in, a *nuclear reactor.*

**8.**  *Waste* means any material, resulting from the operation of a *nuclear facility* as defined in the first two items of *nuclear facility,* containing *by-product material* other than the tailings or wastes produced by the extraction or concentration of thorium or uranium from any ore processed primarily for its *source material* content.

**PART III**
**The following apply to Part III**

**1.  GOVERNMENT / LEGAL / WAR**

  **A.**  Any act or condition of: war (declared or not), civil war, invasion, insurrection, rebellion, revolution, or seizure of power, including acts done to defend against any such act or condition, whether actual or expected.

  **B.**  Knowing violation of penal law or ordinance committed by, or with the consent of, an *insured.* Statutory fines or liability. Exemplary or punitive damages.

  **C.**  Confiscation, *loss,* or seizure under customs, drug enforcement, or quarantine legislation or regulations. *Loss* to property that is contraband or in the course of illegal transportation or trade.

**2.  NUCLEAR / RADIOACTIVE *LOSS***

  **A.**  Any nuclear event, occurrence, or operation, including nuclear explosion, nuclear reaction, nuclear radiation, or radioactive contamination.

    These are not fire, explosion, smoke or any other covered cause of *loss.*

  **B.**  The explosive, radioactive, toxic, or other injurious properties of nuclear or radioactive materials — whether such materials are natural or manufactured.

# COMMON CONDITIONS — PARTS II AND III

**The following are Conditions that apply to both Parts II and III. These Common Conditions apply in addition to those shown under the separate coverage parts of this policy.**

**1.  ACTION OR SUIT AGAINST *US***
**PART II**
No action may be brought against *us* until all conditions in this policy are complied with, and until the amount of the *insured's* obligation (payable under this policy) has been determined by judgment in trial or by agreement made with *our* written consent.

No right exists under this policy for *you* or others to make *us* party to an action against any *insured.*

**PART III**
No action may be brought against *us* until all conditions in

this policy are complied with, and unless brought within one year from the date of *loss.*

No right exists under this policy for *you* or others to make *us* party to an action against any *insured.*

**2.  ASSIGNMENT OF *YOUR* INTEREST**
No assignment of an interest under this policy is binding on *us* without *our* written consent. However, if *you* are an individual and die, this insurance applies to the following who become *insureds* under this policy in the described capacity:

  **A.**  *Your* legal representative, while acting within the scope of the representative's duties.

**B.** Those with custody of *your* property prior to appointment of a legal representative.

**3. CANCELLATION / TERMINATION**

   **A. General**

     **1.** *You* may cancel this policy by surrendering the policy to *us* or *our* agent or by mailing *us* or *our* agent notice stating a subsequent cancellation date for the policy. Such request made by the *first named insured* applies for all *insureds* / interests named in this policy.

     **2.** If *we* cancel, any refund will be pro rata. If the *first named insured* cancels, refund may be less than pro rata. Any return premium is payable to the *first named insured* — within 30 days after the cancellation date.

     **3.** If *you* secure insurance with another insurer to replace *our* policy and do not pay the premium, or installment payment, for this policy when due: this policy terminates at the time such other insurance becomes effective. If *you* sell a covered *auto* to others, coverage under this policy terminates at the time title is transferred to others with respect to such *auto.*

   **B.** *Our* **Right to Cancel or Terminate**
*Our* rights to cancel or terminate this insurance are described elsewhere in this policy in the state mandatory endorsement.

**4. CONCEALMENT / MISREPRESENTATION / FRAUD**

   **A.** This policy is void if, either before or after a *loss,* any *insured* misrepresents or knowingly conceals any material fact or circumstance, commits fraud, or swears falsely relating to any aspect of this insurance (including the information *we* relied upon in issuing this contract).

   **B.** However, if *we* specifically choose not to declare this policy void, *we* do not provide insurance under this policy to, or for the benefit of, any such *insureds.*

**5. CONFORMITY WITH STATUTE**
It is agreed by *us* that the provisions of this policy are amended to conform to all applicable statutory requirements.

**6. COVERAGE TERRITORY**
*We* cover *accidents* or *losses* occurring only within the United States of America (including its possessions and territories), the District of Columbia, Puerto Rico and Canada.

*We* also cover *accidents* involving, or *loss,* to a covered *auto* while being transported between any of these places.

**7. EXAMINATION / PREMIUM AUDIT**

   **A.** *We* may, at *our* option, inspect *your* property and operations at any time, make surveys, and make recommendations. However, *our* reports or recommendations or those of any inspection bureau or rating bureau do not constitute a determination or representation that any premises or operations are in compliance with law or regulation, healthful, or safe. *We* may inspect and audit *your* books and records at any time (including up to 3 years after termination of this insurance contract) to the extent such pertains to the subject of this insurance or payment of premium. The *first named insured* is required to keep all records necessary for such and send complete accurate copies to *us* at *our* request.

   **B.** The estimated premium for this insurance is based on the exposures *you* told *us* *you* would have at the beginning of the policy term. *We* will compute the final premium due after *we* determine *your* actual exposures.

The estimated premium will be credited against the final premium due and the *first named insured* will be billed for any balance. If the estimated premium exceeds the final premium, the difference will be refunded to the *first named insured.*

**8. LIBERALIZATION**
This policy is automatically extended to include provisions approved during the policy period or within 45 days prior to its inception, which would broaden coverage under this policy, if such are not subject to additional premium or concurrent with coverage restrictions.

**9. OTHER INSURANCE**

   **A.** For any covered *auto* owned by *you,* this insurance is primary insurance. For any covered *auto you* do not own, this insurance is excess insurance over any other collectible insurance applicable to the *loss.*

   **B.** Coverage A Special Condition

     **1.** While a covered *auto* that is a *trailer* is attached to another vehicle, Coverage A under this policy for such *trailer* is:

       **a.** Excess while the *trailer* is attached to motor vehicle *you* do not own.

       **b.** Primary while the *trailer* is attached to a covered *auto* owned by *you.*

     **2.** Coverage A under this policy is primary for any liability covered under the Contractual Supplemental Coverage.

   **C.** When this insurance and any other insurance cover on the same basis, either excess or primary, *we* pay no greater proportion of the total amount of *loss* or the *insured's* obligation than the applicable limit of liability of this policy bears to the total amount of insurance of all insurers covering on the same basis.

   **D.** For Coverage B, other collectible insurance means only other collectible *auto* medical payments insurance.

**10. PREMIUMS**

   **A.** The *first named insured* is responsible for the payment of all premiums, and will be the sole payee of any premium *we* return. Premium adjustments, including audit premium adjustments, are due and payable on *our* notice of such to the *first named insured.*

   **B.** If this policy is issued for a term longer than one year, the premium for this policy will be computed on an

annual basis. *We* will use the rates / premiums in effect at the beginning of each year of the policy term.

**11. RECOVERY FROM OTHERS**

If any *insured* (or others) to whom, or for whom, *we* make payment has any rights of recovery for the damages or *loss* from another, those rights are transferred to *us* to the extent of *our* payment under this policy. *Insureds* (or such others) must do whatever *we* require to secure these rights.

This Condition does not apply to Coverage B.

**12. TIME OF INCEPTION**

The time of inception and expiration is 12:01 A.M. Standard Time at the address shown in the Declarations.

**13. TWO OR MORE POLICIES ISSUED BY *US***

**A.** If this policy and any other policy or coverage form issued to *you* by *us*, or by any company affiliated with *us*, apply to the same *accident* or *loss*, *our* maximum limit of liability under all of the policies and coverage forms shall not exceed the highest applicable limit of liability provided under any one policy or coverage form. In no event will any limit of liability of this policy be excess over or added to the limit of any other such policy or coverage forms.

**B.** This Condition does not apply to any policy or coverage form issued by *us*, or by any company affiliated with *us*, as an umbrella / excess liability policy and which specifically applies as excess insurance over this policy.

**14. WAIVER OR CHANGE OF PROVISIONS**

Only the *first named insured* may request changes in this policy. The terms of this policy may not be waived or changed except in writing, signed by *our* agent and attached to this policy. The exercise of *our* rights in this policy is not an act of waiver. This policy contains all related agreements between *you* and *us*.

---

# COMMON GLOSSARY • PARTS II AND III

**Certain words and phrases used in this policy are defined for the purposes of this insurance contract. These are described below.**

*Accident*

*Accident* includes continuous or repeated exposure to substantially the same general harmful conditions resulting in *bodily injury* or *property damage.*

*Actual Cash Value*

Consideration may be given by *us* in *our* determination of *actual cash value* to: age; condition; cost to repair, replace, or restore the property, subject to deduction for depreciation; deterioration; economic value; market value; obsolescence; original cost; use; utility; or other circumstances that may reasonably affect value.

*Auto*

*Auto* means:

**A.** Any land motor vehicle or trailer (including semitrailers) designed for travel on public roads.

**B.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged

*Auto* does not include *mobile equipment.*

*Bodily Injury*

*Bodily injury* means bodily harm, sickness, or disease sustained by any person including death at any time resulting from such.

*Diminution in Value*

*Diminution in value* means the actual or perceived reduction in market or resale value that results from a *loss.*

*Employee*

*Employee* means a person employed by *you* and includes a *leased worker*. *Employee* does not include a *temporary* worker or independent contractor.

*Family Member*

*Family member* means any person related to *you* by adoption, blood, or marriage who is a resident of *your* household. This includes a ward or foster child.

*Fungi*

*Fungi* means any type or form of fungus, mold, mildew spores, algae, smut, protists, rusts or *rot and decay organisms,* and any similar or related organisms and any mycotoxin, substance, compounds, chemicals, mist or vapor produced by any *fungi* in any form, or any by products or waste produced by *fungi,* but does not include any *fungi* intended to be edible.

*Insured*

*Insured* means any person or organization listed as such in the applicable Who Is An *Insured* provision.

*Leased Worker*

*Leased worker* means a person who is leased to *you* by a labor leasing firm under an agreement between *you* and such firm to perform duties related to the conduct of *your* business / operations. *Leased worker* does not include a *temporary worker.*

*Loss*

*Loss* means fortuitous direct physical damage or destruction including the taking of property by theft.

*Mobile Equipment*

*Mobile equipment* means any of the following land vehicles (including any equipment or machinery permanently attached to, or forming an integral part of, the vehicle):

**A.** Vehicles used solely at premises owned or rented by *you.*

**B.** Vehicles designed for primary use off public roads such as bulldozers, farm machinery, forklifts, and similar commercial types.

**C.** Vehicles used primarily to provide mobility to the following:

    **1.** Concrete mixers (other than mix-in-transit type).*

    **2.** Diggers, drills, loaders, power cranes, or shovels.*

    **3.** Road construction and resurfacing equipment, such as graders, rollers, or scrapers.*

**D.** Vehicles that are not self-propelled used primarily to provide mobility to:

   **1.** Air compressors, generators, or pumps; building cleaning, geophysical exploration, lighting, spraying, welding, or well servicing equipment.*

   **2.** Cherry pickers and similar devices used to lower / raise workers.*

**E.** Vehicles that travel on crawler treads.

**F.** Vehicles not otherwise used as described in the preceding Paragraphs A through E that are maintained by *you* primarily for uses other than the transportation of cargo or persons. However, self-propelled vehicles designed as described in the following Paragraphs 1, 2, 3 or equipped with permanently attached devices are not *mobile equipment* but are considered *autos* for the purposes of this insurance:

   **1.** Designed primarily for road maintenance (other than road construction or resurfacing), snow removal, or street cleaning.

   **2.** Equipped with air compressors, generators, or pumps; building cleaning, geophysical exploration, lighting, spraying, welding, or well servicing equipment.

   **3.** Equipped with cherry pickers and similar devices mounted on automobile or truck chassis and used to raise / lower workers.

   However, *mobile equipment* does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered *autos.*

**\*** **However, only if permanently attached to, or forming an integral part of, the vehicle.**

### Occupying

*Occupying* means getting in, getting off, getting out of, in, on, or upon.

### Pollutants

*Pollutants* are any gaseous, liquid, solid, or thermal contaminant or irritant, including acids, alkalis, chemicals, fumes, smoke, soot, vapors, and waste (including materials to be reclaimed, reconditioned, or recycled).

### Private Passenger Type

If *you* are an individual, *private passenger type* also includes any covered *auto* owned by *you* that is a pickup or van type truck not used for business purposes, other than farming or ranching.

### Property Damage

*Property damage* means the following:

**A.** Direct physical injury to tangible property, including loss of use of such property (the loss of use is deemed to occur at the time of such direct physical injury).

**B.** Loss of use of tangible property that is not physically injured: all such loss of use is deemed to occur at the time of the *accident* causing the loss.

### Rot and Decay Organisms

*Rot and decay organisms* means any living organism that causes decomposition of physical property.

### Temporary Worker

*Temporary worker* means a person who is furnished to *you* as a substitute for a permanent *employee* on leave or to meet seasonal or other short-term workload conditions.

*Temporary worker* does not include a *leased worker.*

### Trailer

*Trailer* includes semitrailer.

### We / Us / Our

*We, us,* and *our* refer to the Insurance Company named in this policy.

### You / Your/ Yourself

*You, your* and *yourself* refer to the *named insureds* who are the *insured* named in the Declarations. *First named insured* is the *insured* named first in the Declarations. *You* also includes the *insured's* spouse if a resident of the same household.

### Your Work

*Your work* means the following:

**A.** Operations or work performed by *you* or on *your* behalf.

**B.** Equipment, materials, or parts furnished in connection with such work or operations.

   *Your work* also includes the following: warranties or representations made at any time with respect to the durability, fitness, performance, quality, or use of any of *your work;* providing or failing to provide instructions or warnings.

MCA 010 11 14

<strong>MCA 820</strong> 07 13

**MANDATORY ENDORSEMENT – NEW JERSEY**

*For a covered auto licensed or principally garaged in New Jersey, this endorsement amends the policy in conformance with New Jersey laws with regard to: our rights to cancel or nonrenew as provided under N.J.A.C. 11:1-20 et al; physical damage inspection; No-Fault requirements; uninsured and Underinsured Motorists Coverage; and also modifies other policy provisions.*
**The information required to complete the option selection and coverage limits is shown in the separate Schedule / Supplemental Declarations. Except as provided below, all other provisions in this policy are unchanged.**

**ADDITIONAL CONDITIONS**

1. **The CANCELLATION / TERMINATION COMMON CONDITION is supplemented as follows:**

    B. *Our* **Right to Cancel / Terminate**

    1. **Cancellation / Termination for Nonpayment of Premium**

        a. If the *first named insured* fails to pay, when due, any premium or installment for this policy, it may be cancelled by *us* by mailing or delivering notice of cancellation to the *first named insured* not less than 10 days prior to the effective date of cancellation.

        b. This policy terminates automatically on the expiration date of the expiring policy term if the *first named insured* does not pay when due any renewal premium, or installment payment, for this policy. Notice of the amount of renewal premium must be mailed or delivered by *us* to the *first named insured* not less than 30 days but not more than 120 days prior to the premium due date.

    2. **Cancellation / Termination for Causes Other Than Nonpayment of Premium**

        a. *We* may cancel or nonrenew for reasons other than nonpayment of premium by mailing notice to the *first named insured* not less than 30 days (except for reasons of moral hazard which require only 10 days' notice) but not more than 120 days prior to the effective date of cancellation or termination.

        b. This policy cannot be cancelled or terminated for any underwriting reason or guideline that is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the *first named insured.* The underwriting reasons or guidelines that *we* can use to cancel or terminate this policy are maintained on file by *us. We* will furnish such to *you/your* lawful representative upon written request.

        c. This provision does not apply to any policy that has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

    3. *We* mail or deliver *our* notice of cancellation or termination to the *first named insured's* last mailing address known to *us. We* also agree to mail or deliver such notice to any other person entitled to such notice under this policy.

2. **PART III D – SPECIAL PHYSICAL DAMAGE**

**CONDITIONS is amended by adding the following:**

A. **If this policy covers a *private passenger auto* under Part III, the following provisions apply:**

    **Mandatory Inspection for Physical Damage Coverage**

    1. *We* have the right to inspect any *private passenger auto*, including a nonowned *private passenger auto*, insured or intended to be insured under this policy, before any Physical Damage Coverage will become effective.

    2. During the term of the policy, coverage for an additional or replacement *private passenger auto* will not become effective until the *insured* notifies *us* and requests coverage for such *private passenger auto.* However, if the *insured* replaces a *private passenger auto* which was insured with *us* for at least 12 months before the replacement date with a *private passenger auto* acquired during the policy period, *we* will provide the same coverage which applied to the replaced *private passenger auto* for 3 days beginning on the date the *insured* acquires the replacement *private passenger auto. We* will also provide an additional day of coverage for each Saturday, Sunday or New Jersey State holiday falling within the 3 days. After 3 days, coverage will not apply until the *insured* notifies *us* and requests coverage for such *private passenger auto.*

    3. When an inspection is required by *us*, the *insured* shall cooperate and make the *private passenger auto* available for inspection.

As used in this Condition, the definition of *private passenger auto* is replaced by the following:

*Private passenger auto* means an *auto* of the private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or camper-type vehicle used for recreational purposes owned by an individual or by a husband and wife who are residents of the same household, not customarily used in the business, occupation or profession of the *insured* other than farming or ranching. An *auto* owned by a farm family co-partnership or corporation, which is principally garaged on a farm or ranch and otherwise meets this definition, shall be considered a *private passenger auto* owned by two or more relatives resident in the same household.

® © 2013 MSO®, Inc.

**B.** **The HOW LOSSES ARE SETTLED Condition is amended as follows:**

When *we* pay the cost necessary to repair or restore the damaged or stolen property, *you* have the option of using either an *auto* repair facility with which *we* have an arrangement or an *auto* repair facility of *your* choice. If *you* choose to use an *auto* repair facility other than one with which *we* have an arrangement, *we* will pay *you* according to the conditions, cost and terms provided by the *auto* repair facility with which *we* have an arrangement.

**3.** **PART II C – LIABILITY NOT INSURED is amended as follows:**

The POLLUTION / ENVIRONMENTAL DAMAGE EXCLUSION does not apply for damages up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

**4.** **The last paragraph of The DUTIES Conditions under Part II D and Part III D is replaced by the following:**

Failure to comply with these conditions can alter or void *our* obligation under this policy with respect to the claim or suit.

**5.** The CONCEALMENT / MISREPRESENTATION / FRAUD Common Condition does not apply for damages up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

**6.** **Additional Policy Provision**

Throughout this policy, the term "spouse" also includes a person with whom *you* have entered into a civil union as recognized under the New Jersey Civil Union Act, and the term "marriage" also includes such a civil union.

## PERSONAL INJURY PROTECTION COVERAGE

**This endorsement provides coverage as required under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "New Jersey No-Fault Law," as follows:**

**A.** **COVERAGE**

**1.** **PERSONAL INJURY PROTECTION**

*We* will pay personal injury protection benefits for *bodily injury* sustained by an *eligible injured person* or an *insured person* caused by an *accident* occurring anywhere in the world during the policy term and arising out of the maintenance, ownership, or use, including loading or unloading, of a *private passenger auto* as an *auto.*

These Personal Injury Protection Benefits consist of:

**a.** **Medical Expense Benefits**

An amount not exceeding $250,000 per person per *accident* for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating *health care provider* for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a *health care provider,* be *clinically supported* and consistent with the symptoms, diagnosis or indications of the *insured.* They must also be consistent with the most appropriate level of services that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an *identified injury.* They must not be rendered primarily for the convenience of the *insured* or *health care provider* nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**b.** ***Income* Continuation Benefits**

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of *income* of an *income producer* during his or her lifetime, as a result of *bodily injury* disability, not to exceed net *income* normally earned during the period in which benefits are payable.

**c.** **Essential Services Benefits**

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an *eligible injured person* as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for *income* but for the care and maintenance of himself or herself and persons related to the *eligible injured person* by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the *eligible injured person.*

**d.** **Death Benefits**

The amount or amounts payable in the event of the death of an *eligible injured person* as determined in the following paragraphs:

**1.** If the *eligible injured person* was an *income producer* at the time of the *accident,* an amount equal to the difference between $5,200 and all basic *income* continuation benefits paid for any loss of *income* resulting from his or her injury prior to his or her death;

**2.** If the *eligible injured person* ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to

the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

**e. Funeral Expense Benefits**
An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

**2. EXTENDED MEDICAL EXPENSE BENEFITS**
*We* will pay extended medical expense benefits for *bodily injury* sustained by an *insured person* caused by an *accident* occurring anywhere in the world during the policy term and arising out of the maintenance, ownership, or use including loading or unloading, of a *highway vehicle* not owned by or furnished or available for the regular use of the *named insured* or any *family member.*

Subject to the limits shown in the Schedule or Supplemental Declarations, Extended Medical Expense Benefits consist of:

**a. Medical Expense Benefits**
Reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating *health care provider* for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a *health care provider,* be *clinically supported* and consistent with the symptoms, diagnosis or indications of the *insured.* They must also be consistent with the most appropriate level of services that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an *identified injury.* They must not be rendered primarily for the convenience of the *insured* or *health care provider* nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**b. Funeral Expense Benefits**
An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

**B. EXCLUSIONS**
**1. PERSONAL INJURY PROTECTION**
*We* will not pay Personal Injury Protection benefits for *bodily injury:*

**a.** To a person whose conduct contributed to the *bodily injury* in any of the following ways:
**1.** While committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or

**2.** While acting with specific intent to cause injury or damage to himself or herself or others;

**b.** To any person who, at the time of the *accident,* was the owner or registrant of a *private passenger auto* registered or principally garaged in New Jersey that was being operated without personal injury protection coverage;

**c.** To any person other than the *named insured* or any *family member* or a resident of New Jersey, if the *accident* occurs outside of New Jersey;

**d.** Arising out of the maintenance, ownership or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

**e.** Due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

**f.** Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

**g.** To any person, other than the *named insured* or any *family member,* if such person is entitled to New Jersey personal injury protection coverage as a *named insured* or *family member* under the terms of any other policy with respect to such coverage;

**h.** To any *family member,* if such person is entitled to New Jersey personal injury protection coverage as a *named insured* under the terms of another policy;

**i.** To any person operating or *occupying* a *private passenger auto* without the permission of the owner or the *named insured* under the policy insuring that *auto;*

**j.** For the following *diagnostic tests:*
**1.** Brain mapping, when not done in conjunction with appropriate neurodiagnostic testing;

**2.** Iridology;

**3.** Mandibular tracking and simulation;

**4.** Reflexology;

**5.** Spinal diagnostic ultrasound;

**6.** Surface electromyography (surface EMG);

**7.** Surrogate arm mentoring; or

**8.** Any other *diagnostic test* that is determined to be ineligible for coverages under personal injury protection coverage by New Jersey law or regulation.

**k.** For the following *diagnostic tests* when used to treat temporomandibular joint disorder (TMJ/D):
   **1.** Doppler ultrasound;
   **2.** Electroencephalogram (EEG);
   **3.** Needle electromyography (needle EMG);
   **4.** Sonography;
   **5.** Thermograms / thermographs;
   **6.** Videofluoroscopy.

**2. EXTENDED MEDICAL EXPENSE BENEFITS**
The exclusions that apply to Personal Injury Protection also apply to Extended Medical Expense Benefits. In addition, the following exclusions are added to Extended Medical Expense Benefits.
   **a.** *We* will not pay Extended Medical Expense Benefits for *bodily injury* to any *insured* who is entitled to benefits for the *bodily injury* under:
      **1.** Personal Injury Protection Coverage; or
      **2.** Any:
         **a.** Workers' compensation law; or
         **b.** Medicare provided under federal law.
   **b.** *We* will not pay Extended Medical Expense Benefits for *bodily injury* to any *insured* who would be entitled to benefits for the *bodily injury* under Personal Injury Protection Coverage, except for the application of a:
      **1.** Deductible;
      **2.** Co-payment; or
      **3.** Medical fee schedule promulgated by the New Jersey Department of Banking and Insurance.

**C. LIMIT OF INSURANCE**
   **1.** Any amount payable by *us* as Personal Injury Protection benefits for *bodily injury* shall be reduced by:
      **a.** All amounts paid, payable, or required to be provided under any workers' compensation or employees' temporary disability law.
      **b.** Medicare provided under federal law.
      **c.** Benefits actually collected that are provided under federal law to active and retired military personnel.
   **2.** Any amount payable by *us* as medical expense benefits will be limited by medical fee schedules, as promulgated by the New Jersey Department of Banking and Insurance for specific injuries or services, or the usual, customary, and reasonable fee, whichever is less.
   **3.** Any amounts payable for medical expense benefits as the result of any one *accident* shall be:
      **a.** Reduced by the applicable deductible indicated in the Schedule or in the Supplemental Declarations; and
      **b.** Subject to the co-payment of 20% for the amount between the applicable deductible and $5,000.
   **4.** The applicable limit of *income* continuation benefits

applies separately to each full regular and customary work week of an *eligible injured person*. If this disability from work or employment consists of or includes only a part of such a week, *we* shall be liable only for that proportion of such weekly limit that the number of days lost from work or employment during the partial week bears to the number of days in his or her full work week.

   **5.** If the Schedule or Supplemental Declarations indicates that the *named insured* has elected the Medical Expense Benefits As Secondary option, the following provisions apply to medical expense benefits:
      **a. Priority of Benefits**
         **1.** The health benefits plan under which the *named insured* and any *family member* are insured shall provide primary coverage for *allowable expenses* incurred by the *named insured* and any *family member* before any medical expense benefits are paid by *us.*
         **2.** This insurance shall provide secondary coverage for medical expense benefits for *allowable expenses,* which remain uncovered.
         **3.** The total benefits paid by the health benefits plans and this insurance shall not exceed the total amount of *allowable expenses.*
      **b. Determination of Medical Expense Benefits Payable**
         **1.** To calculate the amount of *actual benefits* to be paid by *us, we* will first determine the amount of *eligible expenses* which would have been paid by *us,* after application of the deductible and co-payment indicated in the Schedule or Supplemental Declarations, had the *named insured* not elected the Medical Expense Benefits As Secondary Coverage option.
         **2.** If the remaining allowable expenses are:
            **a.** Less than the benefits calculated in the preceding Paragraph 1, *we* will pay *actual benefits* equal to the remaining *allowable expenses,* without reducing the remaining *allowable expenses* by the deductible or co-payment.
            **b.** Greater than the benefits calculated in the preceding Paragraph 1, *we* will pay *actual benefits* equal to the benefits calculated in the preceding Paragraph 1, without reducing the remaining *allowable expenses* by the deductible or co-payment.
         **3.** *We* will not reduce the *actual benefits* determined in the preceding Paragraph 2**:**
            **a.** By any deductibles or co-payments of the health benefits plans which have provided primary coverage for medical expense benefits; or
            **b.** For any *allowable expense* remaining uncovered which otherwise would not be

MCA 820 07 13

an *eligible expense* under personal injury protection coverage, except as set forth in the following Paragraph 4.

4. In determining remaining uncovered *allowable expenses, we* shall not consider any amount for items of expense which exceed the dollar or percent amounts recognized by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance.

5. The total amount of medical expense benefits for the *named insured* or any *family member* per *accident* shall not exceed the maximum amount payable for medical expense benefits under this policy.

c. **Health Benefits Plan Ineligibility**
1. If, after the *named insured* has elected the Medical Expense Benefits As Secondary Coverage option, it is determined that the *named insured* or any *family member* did not have a health benefits plan in effect at the time an *accident* occurred which resulted in *bodily injury* to the *named insured* or any *family member,* medical expense benefits shall be provided to the *named insured* or any *family member,* subject to the following:
   a. Only Paragraph 1 of the Limit of Insurance provision will apply with respect to medical expense benefits.

   b. Any amount payable for medical expense benefits for the *named insured* and any *family member* as a result of any one accident shall:
   **(i)** Be reduced by a deductible equal to the sum of $750 plus the applicable deductible indicated in the Schedule or in the Supplemental Declarations; and
   **(ii)** Be subject to co-payment of 20% for the amounts less than $5,000 after the deductible has been applied.

   **(iii)** Be determined:
   - By the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or

   - By *us,* on a reasonable basis, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, if an item of expense is not included on the medical fee schedules.

   **(iv)** Not exceed the maximum amount payable for medical expense benefits under this policy.

2. All items of medical expense incurred by the

*named insured* or any *family member* for the treatment of *bodily injury* shall be *eligible expenses* to the extent the treatment or procedure from which the expenses arose:
   a. Is recognized on the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or

   b. Are reasonable expenses in accordance with Section 4 of the New Jersey Reparation Reform Act.

3. *We* shall be entitled to recover the difference between:
   a. The reduced premium paid under this policy for the Medical Expense Benefits As Secondary option; and

   b. The premium which would have been paid under this policy had the *named insured* not elected such option.

   *We* will not provide any premium reduction for the Medical Expense Benefits As Secondary option for the remainder of the policy period.

6. The limit of insurance shown in the Schedule or Supplemental Declarations for weekly *income* continuation benefits shall be prorated for any period of *bodily injury* disability less than one week.

D. **CHANGES IN CONDITIONS**
1. The DUTIES OF *INSUREDS* – WHAT TO DO IN CASE OF *ACCIDENT,* CLAIM, INJURY OR SUIT Condition is amended by the addition of the following:
   a. If an *eligible injured person, insured person* or the legal representative or survivors of either institutes legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, he or she must immediately give *us* a copy of the summons and complaint or other process served in connection with the legal action.

   b. The *eligible injured person, insured person* or someone on their behalf must immediately give *us* written proof of claim including:
   1. Full particulars of the nature and extent of the *bodily injuries;* and

   2. Such other information that will help *us* determine the amount due and payable.

   c. The *eligible injured person* or *insured person* must submit to physical examination by physicians when and as often as *we* reasonably require and a copy of the medical report will be forwarded to such *eligible injured person* or *insured person* if requested.

   d. If the notice, proof of claim or other reasonably obtainable information regarding the *accident* is received by *us* more than 30 days after the *accident, we* may impose an additional Medical Expense benefits co-payment in accordance with New Jersey law or regulation. This co-payment will be in addition to:

MCA 820 07 13

      **1.** Any medical expense benefits deductible or co-payment; or

      **2.** Any penalty imposed in accordance with *our* Decision Point Review Plan.

**2.** For Extended Medical Expense Benefits, the Two or More Policies Issued By *Us* Common Condition does not apply. However, no one will be entitled to receive duplicate payments for the same elements of loss.

**3.** The following Conditions are added:

    **a. Reimbursement and Trust**

    Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, if *we* make any payment to any *eligible injured person* or *insured person* under this coverage and that person recovers from another party, he or she shall hold the proceeds in trust for *us* and pay *us* back the amount *we* have paid. *We* will have a lien against such payment, and may give notice of the lien to the person or organization causing *bodily injury,* his or her agent or insurer or a court having jurisdiction in the matter.

    **b. Payment of Personal Injury Protection Benefits**

      **1.** Medical expense benefits and essential services benefits may be paid at *our* option to the *eligible injured person, insured person* or the person or organization furnishing the products or services for which such benefits are due. These benefits shall not be assignable except to providers of service benefits. Any such assignment is not enforceable unless the provider of service benefits agrees to be subject to the requirements of *our* Decision Point Review Plan. In the event of the death of an *eligible injured person* or *insured person* any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the *eligible injured person's* or *insured person's* estate.

      **2.** Benefits payable under Paragraph A.1.d.1. of the description of death benefits are payable to the *eligible injured person's* surviving spouse, to his or her surviving children, or if there is not a surviving spouse or any surviving children, to the *eligible injured person's* estate.

      **3.** Benefits payable under Paragraph A.1.d.2. of the description of death benefits are payable to the person who has incurred the expense of providing essential services.

      **4.** Funeral expense benefits are payable to the *eligible injured person's* or *insured person's* estate.

    **c. Deletion of Benefits Other Than Medical Expense Option**

    When the Schedule or the Supplemental Declarations indicates that the Deletion of Benefits Other Than Medical Expenses option applies, *we* will pay personal injury protection benefits

consisting of only medical expense benefits for the *named insured* and *family members.*

    **d. Employee Benefits Reimbursement**

    If the *eligible injured person* or *insured person* fails to apply for workers' compensation benefits or employees' temporary disability benefits for which that person is eligible, *we* may immediately apply to the provider of these benefits for reimbursement of any personal injury protection benefits that *we* have paid.

    **e. Proof of Health Benefits Plan Coverage**

    If the *named insured* has elected the Medical Expense Benefits As Secondary option, the *named insured* shall provide proof that the *named insured* and *family members* are insured by health insurance coverage or benefits in a manner and to an extent approved by the New Jersey Department of Banking and Insurance.

    **f. Special Requirements For Medical Expenses**

      **1. Care Paths For *Identified Injuries* (Medical Protocols)**

        **a.** The New Jersey Department of Banking and Insurance has established by regulation the standard courses of medically necessary diagnosis and treatment for *identified injuries.* These courses of diagnosis and treatments are known as care paths.

        The care paths do not apply to treatment administered during *emergency care.*

        **b.** Upon notification to *us* of a *bodily injury* covered under this policy, *we* will advise the *insured* of the care path requirements established by the New Jersey Department of Banking and Insurance.

        **c.** Where the care paths indicate a decision point, further treatment or the administration of a *diagnostic test* is subject to *our* Decision Point Review Plan.

        A decision point means the juncture in treatment where a determination must be made about the continuation or choice of further treatment of an *identified injury.*

      **2. Coverage For *Diagnostic Tests***

        **a.** In addition to the care path requirements for an *identified injury,* the administration of any of the following *diagnostics tests* is also subject to the requirements of *our* Decision Point Review Plan:

        **(i)** Brain audio evoked potential (BAEP);

        **(ii)** Brain evoked potential (BEP);

        **(iii)** Computer assisted tomographic studies (CT, CAT Scan);

        **(iv)** Dynatron/Cyber station/Cybex;

**(v)** H-reflex Study;

**(vi)** Magnetic resonance imaging (MRI);

**(vii)** Nerve conductive velocity (NCV);

**(viii)** Somasensory evoked potential (SSEP);

**(ix)** Sonogram/ultrasound;

**(x)** Visual evoked potential (VEP).

**(xi)** Any of the following *diagnostic tests* when not otherwise excluded under Exclusion 1.j:
- Brain mapping;
- Doppler ultrasound;
- Electoencephalogram (EEG);
- Needle electromyography (needle EMG);
- Sonography;
- Thermograms / thermographs;
- Videofluoroscopy; or

**(xii)** Any other *diagnostic tests* that are subject to requirements of *our* Decision Point Review Plan by New Jersey law or regulation.

**b.** The *diagnostic tests* listed under the preceding Paragraph 2.a must be administered in accordance with New Jersey Department of Banking and Insurance regulations which set forth the requirements for the use of *diagnostic tests* in evaluating injuries sustained in *auto accidents.*

However, those requirements do not apply to *diagnostic tests* administered during *emergency care.*

**c.** *We* will pay for other *diagnostic tests* that are:
**(i)** Not subject to *our* Decision Point Review Plan; and

**(ii)** Not specifically excluded under Exclusion 1.j;
only if administered in accordance with the criteria for medical expenses as provided in this endorsement.

**3. Decision Point Review Plan**
**a.** Coverage for certain medical expenses under this endorsement is subject to *our* Decision Point Review Plan, which provides appropriate notice and procedural requirements that must be adhered to in accordance with New Jersey law or regulation. *We* will provide a copy of this plan upon request, or in the event

of any claim for medical expenses under this coverage.

**b.** *Our* Decision Point Review Plan includes the following minimum requirements as prescribed by New Jersey law or regulation:
**(i)** The requirements of the Decision Point Review Plan only apply after the tenth day following the *accident.*

**(ii)** *We* must be provided prior notice as indicated in *our* plan, with appropriate *clinically supported* findings, that additional treatment for an *identified injury,* the administration of a *diagnostic test* listed under the preceding Paragraph 2.a, or the use of durable medical equipment is required.

The notice and *clinically supported* findings may include a comprehensive treatment plan for additional treatment.

**c.** Once *we* receive such notice with the appropriate *clinically supported* findings, *we* will in accordance with *our* plan:
**(i)** Promptly review such notice and supporting materials; and

**(ii)** If required as part of *our* review, request any additional medical records or schedule a physical examination.

**d.** *We* will then determine and notify the *eligible injured person* or the *insured person* whether *we* will provide coverage for the additional treatment, *diagnostic test,* or the use of durable medical equipment as indicated in *our* plan. Any determination *we* make will be based on the determination of a *health care* provider.

The notification of the decision whether to provide coverage for the additional treatment or tests requested will be made within three business days of receipt of the request or additional information. In the case of an independent medical exam, the notification of the decision will be made within three business days after the exam. If a report is made, a copy of the report is available upon request.

**e.** Any physical examination of an *eligible injured person* or *insured person* scheduled by *us* will be conducted in accordance with *our* plan.

**f.** *We* may deny reimbursement of further treatment, testing or use of durable medical equipment for repeated unexcused failure of an *eligible injured person* or *insured person* to appear for a physical examination required by *us* in accordance

with *our* plan.

**g.** A penalty will be imposed in accordance with *our* plan if:

    **(i)** *We* do not receive proper notice and *clinically supported* findings for further treatment, *diagnostic tests* or the use of durable medical equipment in accordance with the requirements of *our* plan; or

    **(ii)** Any *eligible injured person* or *insured person* fails to use an approved network in accordance with N.J.A.C. 11:3-4.8.

No penalty will apply if the required notice was received but *we* failed to act in accordance with *our* plan to request further information, or to modify or deny reimbursement of additional treatment, *diagnostic test* or the use of durable medical equipment.

**g. Dispute Resolution**

If *we* and any person seeking personal injury protection coverage do not agree as to the recovery of personal injury protection coverage under this policy, then the matter may be submitted to dispute resolution, on the initiative of any party to the dispute, in accordance with N.J.A.C. 11:3-5.6.

However, prior to submitting such matter to dispute resolution, providers who are assigned ser ice benefits by an *eligible injured person* or *insured person*, or have a power of attorney from such person, are subject to *our* internal appeals process.

Any request for dispute resolution may include a request for review by a medical review organization.

**4.** The following Condition is added for Personal Injury Protection:

**Coordination and Non-Duplication**

**a.** Regardless of the number of *autos* insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act or the number of insurers or policies providing such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to *bodily injury* to any one person as the result of any one *accident* shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

**b.** If an *eligible injured person* under this coverage is also an *eligible injured person* under other complying policies, the insurer paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid. The pro rata share is the proportion that the insurer's liability bears to the

total of all applicable limits. Complying Policy means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Banking and Insurance.

**5.** The following Condition is added for Personal Injury Protection and Extended Medical Expense Benefits:

**Medical Payments Deletion**

In consideration of the Coverage provided for Personal Injury Protection and Extended Medical Expense Benefits in Paragraphs A.1 and A.2 of this endorsement, and the adjustment of applicable rates because of *bodily injury* to an *eligible injured person,* any *auto* medical payments coverage provided under the policy is deleted with respect to an *auto* which is a covered *auto.*

**E.   ADDITIONAL DEFINITIONS**

**1.** The definition of *bodily injury* in the COMMON GLOSSARY is replaced by the following:

*Bodily injury* means bodily harm, sickness or disease, including an *identified injury* or death that results from such.

**2.** The following are added to the COMMON GLOSSARY for Personal Injury Protection and Extended Medical Expense Benefits:

**a.** *Actual benefits* means those benefits determined to be payable for *allowable expenses.*

**b.** *Allowable expense* means a medically necessary, reasonable and customary item of expense covered as benefits by the *named insured's* or *family member's* health benefits plan or personal injury protection benefits as an *eligible expense,* at least in part. When benefits provided are in the form of services, the reasonable monetary value of each such service shall be considered as both an *allowable expense* and a paid benefit.

**c.** *Clinically supported* means that a *health care provider,* prior to selecting, performing or ordering the administration of a treatment or *diagnostics test,* has:

    **1.** Physically examined the *eligible injured person* or *insured person* to ensure that the proper medical indications exist to justify ordering the treatment or test;

    **2.** Made an assessment of any current and/or historical subjective complaints, observations, objective findings, neurologic indications, and physical tests;

    **3.** Considered any and all previously performed tests that relate to the injury and the results and which are relevant to the proposed treatment or test; and

    **4.** Recorded and documented these observations, positive and negative findings and conclusions on the *insured's* medical records.

**d.** *Diagnostic test(s)* means a medical service or procedure utilizing any means other than bioanalysis, intended to assist in establishing a:

1. Medical;

2. Dental;

3. Physical therapy;

4. Chiropractic; or

5. Psychological diagnosis;

for the purpose of recommending or developing a course of treatment for the tested patient to be implemented by the treating practitioner or by the consultant.

**e.** *Eligible expense* means:

1. In the case of health benefit plans, that portion of the medical expenses incurred for the treatment of *bodily injury* which is covered under the terms and conditions of the plan, without application of the deductible(s) and co-payment(s), if any.

2. In the case of personal injury protection benefits, that portion of the medical expenses incurred for the treatment of *bodily injury* which, without considering any deductible and co-payment, shall not exceed:

   **a.** The percent or dollar amounts specified on the medical fee schedules, as promulgated by the New Jersey Department of Banking and Insurance, or the actual billed expense, whichever is less; or

   **b.** The reasonable amount, as determined by *us*, considering the medical fee schedules or similar services or equipment in the region where the service or equipment was provided, when an incurred medical expense is not included on the medical fee schedules.

**f.** *Emergency care* means all treatment of a *bodily injury* which manifests itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in death, serious impairment to bodily functions or serious dysfunction to a bodily organ or part. Such *emergency care* shall include all medically necessary care immediately following an *accident*, including but not limited to, immediate pre-hospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. *Emergency care* extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician. *Emergency care* shall be presumed when medical care is initiated at a hospital within 120 hours of the *accident*.

**g.** *Family member* means a person related to the

*named insured* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the *named insured*.

**h.** *Health care provider* means those persons licensed or certified to perform health care treatment or services compensable as medical expenses and shall include, but not be limited to:

1. Hospital or health care facilities that are maintained by a state or any of its political subdivisions or licensed by the Department of Health and Senior Services;

2. Other hospitals or health care facilities designated by the Department of Health and Senior Services to provide health care services, or other facilities, including facilities for radiology and diagnostic testing, free-standing emergency clinics or offices, and private treatment centers;

3. A non-profit voluntary visiting nurse organization providing health care services other than in a hospital;

4. Hospitals or other health care facilities or treatment centers located in other states or nations;

5. Physicians licensed to practice medicine and surgery;

6. Licensed chiropractors, dentists, optometrists, pharmacists, chiropodists (podiatrists), psychologists, physical therapists, health maintenance organizations, orthotists and prosthetists, professional nurses, occupational therapists, speech language pathologists, audiologists, physician assistants, physical therapists assistants and occupational therapy assistants;

7. Registered bio-analytical laboratories;

8. Certified nurse-midwives and nurse practitioners/clinical nurse-specialists; or

9. Providers of other health care services or suppliers including durable medical goods.

**i.** *Identified injury* means the following *bodily injuries* for which the New Jersey Department of Banking and Insurance has established standard courses of medically necessary diagnosis and treatment;

1. Cervical Spine: Soft Tissue Injury;

2. Cervical Spine: Herniated Disc / Radiculopathy;

3. Thoracic Spine: Soft Tissue Injury;

4. Thoracic Spine: Herniated Disc / Radiculopathy;

5. Lumbar-Sacral Spine: Soft Tissue Injury;

6. Lumbar-Sacral Spine: Herniated Disc / Radiculopathy; and

**7.** Any other *bodily injury* for which the New Jersey Department of Banking and Insurance has established standard courses of appropriate diagnosis and treatment.

**j.** *Income* means salary, wages, tips, commissions, fees and other earnings derived from work or employment.

**k.** *Income producer* means a person who, at the time of the *accident*, was in an occupational status, earning or producing income.

**l.** *Named insured* means the person or organization named in Item One of the Declarations and, if an individual, includes his or her spouse if the spouse is a resident of the household of the *named insured*, except that if the spouse ceases to be a resident of the same household, the spouse shall be a *named insured* for the full term of the policy in effect at the time of cessation of residency. If the covered *auto* is owned by a farm family co-partnership or corporation, the term *named insured* also includes the head of the household of each family designated in the policy as having a working interest in the farm.

**m.** *Pedestrian* means any person who is not *occupying* or using a vehicle propelled by other than muscular power and designed primarily for use on highways, roads, rails, or tracks.

**n.** *Private passenger auto* means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

**1.** A private passenger or station wagon type auto;

**2.** A van, pickup or panel truck or delivery sedan; or

**3.** A utility *auto* designed for personal use as a camper or motor home or for family recreational purposes.

A *private passenger auto* does not include:

**a.** A Motorcycle;

**b.** An *auto* used as a public or livery conveyance for passengers;

**c.** A van, pickup or panel truck, delivery sedan or utility *auto* customarily used in the occupation, profession or business of an *insured* other than farming or ranching; or

**d.** A utility *auto* customarily used for the transportation of passengers other than members of the user's family or their guests.

**3.** The following definition is added to the COMMON GLOSSARY for Personal Injury Protection:

*Eligible injured person* means:

**a.** The *named insured* and, if the *named insured* is an individual, any *family member*, if the *named insured* or *family member* sustains bodily injury:

**1.** As a result of any *accident* while *occupying* or using a *private passenger auto;* or

**2.** While a *pedestrian,* caused by a *private passenger auto* or by an object propelled by or from a *private passenger auto.*

**b.** Any other person who sustains *bodily injury* while, with *your* permission, that person is *occupying* or using the covered *auto.*

**4.** The following are added to the COMMON GLOSSARY for Extended Medical Expense Benefits:

**a.** *Highway vehicle* means a land motor vehicle or trailer other than:

**1.** A *private passenger auto;*

**2.** A farm type tractor or other equipment designed for use principally off public roads, while not upon public roads;

**3.** A vehicle operated on rails or crawler treads; or

**4.** A vehicle while located for use as a residence or premises.

**b.** *Insured person* means:

**1.** The *named insured,* or, if the *named insured* is an individual, any *family member* of the *named insured,* if the *named insured* or *family member* sustains *bodily injury:*

**a.** While *occupying* or using a *highway vehicle;* or

**b.** While a *pedestrian,* caused by a *highway vehicle.*

**2.** Any other person who sustains *bodily injury* while *occupying* a *highway vehicle* (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such *highway vehicle* is being operated by the *named insured,* or if the *named insured* is an individual, a *family member,* or any other person using such *highway vehicle* with the permission of the *named insured;* or

**3.** Any other person who sustains *bodily injury* while *occupying* a covered *auto* if the covered *auto* is being operated by the *named insured* or, if the *named insured* is an individual, a *family member,* or any other person using the covered *auto* with the permission of the *named insured.*

---

## UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

**This endorsement provides coverage as required under New Jersey law as follows:**

**A. COVERAGE E – UNINSURED / UNDERINSURED MOTORISTS**

1. *We* will pay all the sums the *insured* is legally entitled to recover as compensatory damages from the owner or driver of an *uninsured motor vehicle* or an *underinsured motor vehicle.* The damages must result from *bodily injury* sustained by the *insured,* or *property damage* caused by an *accident.* The owner's or driver's liability for these damages must result from the maintenance, ownership, or use of an *uninsured motor vehicle* or an *underinsured motor vehicle.*

2. With respect to damages resulting from an *accident* with an *underinsured motor vehicle, we* will pay under this coverage only if the following Paragraphs a or b applies:

    a. The limit of the applicable liability bonds or policies have been exhausted by judgments or payments; or

    b. A tentative settlement has been made between an *insured* and the insurer of an *underinsured motor vehicle* and *we:*

        1. Have been given prompt written notice of such tentative settlement; and

        2. Advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a suit brought without *our* written consent is not binding on *us.*

**B. Who Is An *Insured* – Coverage E**

1. The *named insured.*

2. If the *named insured* is an individual, *you* and any *family member.*

3. Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto.* The covered *auto* must be out of service because of loss to it or its breakdown, repair, servicing, or destruction.

4. Anyone for damages such person is entitled to recover because of *bodily injury* sustained by another *insured.*

**C. Exclusions – Liability Not Insured**

*We* do not provide insurance for any of the following:

1. With respect to an *uninsured motor vehicle,* any claim settled without *our* consent.

2. Damages for pain, suffering and inconvenience resulting from *bodily injury* caused by an *accident* involving an *uninsured motor vehicle* or an *underinsured motor vehicle* unless the injured person has a legal right to recover damages for such pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act. The injured person's legal right to recover damages for pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act will be determined by the liability tort limitation, if any, applicable to that person.

3. The direct or indirect benefit of any insurer or self-insurer under a disability benefits, unemployment compensation, workers' compensation, or similar law.

4. The direct or indirect benefit of any insurer of property.

5. Any person while using a vehicle without a reasonable belief that such person is permitted to use such vehicle.

6. *Property Damage* for which the *insured* has been or is entitled to be compensated by other property or physical damage insurance.

7. The first $500 of the amount of *property damage* to the property of each *insured* as the result of any one *accident.*

8. *Property Damage* caused by a hit-and-run vehicle.

9. Exemplary or punitive damages.

10. *Bodily injury* or *property damage* sustained by any *insured* who is an owner of a motor vehicle that is:

    a. Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation; or

    b. Required to be insured in accordance with New Jersey law or regulation, but is not insured for this coverage or any similar coverage.

    However, this exclusion does not apply to an individual *named insured,* and such *named insured's* spouse, unless the individual *named insured* or such *named insured's* spouse are *occupying,* at the time of an *accident,* a motor vehicle described in the preceding Paragraphs 10.a or b.

**D. Limit of Liability**

1. Regardless of the number of claims made, covered *autos, insureds,* premiums paid, or vehicles involved in the *accident,* the Limit of Liability shown in the Schedule or Declarations for Uninsured Motorists Coverage and Underinsured Motorists Coverage is the most *we* will pay for all damages resulting from any one *accident* with an *uninsured motor vehicle* or an *underinsured motor vehicle.*

    a. However, subject to *our* maximum Limit of Liability for this coverage, if:

        1. An *insured* is not an *employee* nor the individual *named insured* under this policy;

        2. That *insured* is an individual *named insured* under one or more other policies providing similar coverage; and

        3. All such other policies have a limit of liability for similar coverage which is less than the Limit of Liability for this coverage;

    then the most *we* will pay for all damages for that *insured* resulting from any one *accident* with an *uninsured motor vehicle* or an *underinsured motor vehicle* will not exceed the highest applicable limit of liability under any coverage form or policy providing coverage to that *insured* as an individual

MCA 820 07 13

*named insured.*

**b.** However, subject to *our* maximum Limit of Liability for this coverage, if:

   **1.** An *insured* is not an *employee* nor the individual *named insured* under this policy or any other policy;

   **2.** That *insured* is insured as a *family member* under one or more other policies providing similar coverage; and

   **3.** All such other policies have a limit of liability for similar coverage which is less than the Limit of Liability for this coverage;

   then the most *we* will pay for all damages for that *insured* resulting from any one *accident* with an *uninsured motor vehicle* or an *underinsured motor vehicle* will not exceed the highest applicable limit of liability under any coverage form or policy providing coverage to that *insured* as a *family member.*

**c.** However, subject to *our* maximum Limit of Liability for this coverage, if:

   **1.** An *insured* is not an *employee* nor the individual *named insured* under this policy or any other policy; and

   **2.** That *insured* is not insured as a *family member* under this policy or any other policy;

   then the most *we* will pay for all damages for that *insured* resulting from any one *accident* with an *uninsured motor vehicle* or an *underinsured motor vehicle* is the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

**2.** With respect to damages resulting from an *accident* involving an *uninsured motor vehicle, we* will not make a duplicate payment under this Coverage for any element of loss for which payment has been made by or for anyone who is legally responsible.

**3.** With respect to damages resulting from an *accident* involving an *underinsured motor vehicle,* the Limit of Liability will be reduced by all sums paid by or for anyone who may be legally responsible, including all sums paid under this policy's Liability Coverage.

**4.** No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage and any Liability Coverage included in this policy.

*We* will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any personal injury protection benefits.

**E.   Additional Conditions**

The Conditions are amended for Uninsured and Underinsured Motorists Coverage as follows:

**1.** THE OTHER INSURANCE COMMON CONDITION is replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   **a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

   However, if an *insured* is:

   **1.** An individual *named insured* under one or more policies providing similar coverage; and

   **2.** Not *occupying* a vehicle owned by that individual *named insured;*

   then any recovery for damages for *bodily injury* or *property damage* for that *insured* may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage to that *insured* as an individual *named insured.*

   However, if an *insured* is:

   **1.** Insured as a *family member* under one or more policies providing similar coverage; and

   **2.** Not an individual *named insured* under this or any other policy;

   then any recovery for damages for *bodily injury* or *property damage* for that *insured* may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage to that *insured* as a *family member.*

   **b.** For any vehicle the *named insured* does not own, this insurance is excess over any other collectible uninsured motorists or underinsured motorists insurance providing coverage on a primary basis.

   **c.** If the coverage under this policy is provided:

   **1.** On a primary basis, *we* will pay only *our* share of the loss that must be paid under insurance providing coverage on a primary basis. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   **2.** On an excess basis, *we* will pay only *our* share of the loss that must be paid under insurance providing coverage on an excess basis. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2.** The DUTIES OF *INSUREDS* – WHAT TO DO IN CASE OF *ACCIDENT,* CLAIM, INJURY, OR SUIT Condition is amended by adding the following:

   **a.** Immediately notify the police if a hit-and-run driver is involved; and

   **b.** Immediately send *us* copies of the legal papers if a suit is brought.

   **c.** A person seeking coverage under this endorsement

MCA 820 07 13

must also immediately notify *us*, in writing, of a tentative settlement between the *insured* and the insurer of an *underinsured motor vehicle*, and allow *us* 30 days to advance payment to that *insured* in an amount equal to the tentative settlement to preserve *our* rights against the insurer, owner or operator of such *underinsured motor vehicle.*

**3.** The RECOVERY FROM OTHERS COMMON CONDITION is amended by adding the following:

If *we* make any payment and the *insured* recovers from another party, the *insured* shall hold the proceeds in trust for *us* and pay *us* back the amount *we* have paid.

*Our* rights do not apply under this provision with respect to damages caused by an *accident* with an *underinsured motor vehicle* if *we:*

  **a.** Have been given notice in writing of a tentative settlement between an *insured* and the insurer of an *underinsured motor vehicle*, as provided in the preceding Paragraph 2.c; and

  **b.** Fail to advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after receipt of notification.

  If *we* advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after receipt of notification:

    **1.** That payment will be separate from any amount the *insured* is entitled to recover under the provisions of this endorsement; and

    **2.** *We* also have a right to recover the advanced payment.

**4.** The following Condition is added:
**ARBITRATION**
  **a.** If *we* and an *insured* disagree whether the *insured* is legally entitled to recover damages from the owner or driver of an *uninsured motor vehicle* or an *underinsured motor vehicle* or do not agree as to

  the amount of damages that are recoverable by that *insured*, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

  **b.** Unless both parties agree otherwise, arbitration will take place in the county in which the *insured* lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to whether the *insured* is legally entitled to recover damages and the amount of damages.

However, this applies only if the amount of damages does not exceed the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1. If the amount of damages exceeds such limits, then either *we* or the *insured* may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, then the arbitrators' decision will be binding.

**F.  Glossary**
As used in this endorsement, the definition of *property damage* is replaced by the following:

*Property damage* means damage to a covered *auto*, or to any property of an *insured* while contained in a covered *auto.*

The following definitions are added:
**1.** *Uninsured motor vehicle* means a land motor vehicle or *trailer:*

  **a.** For which no liability bond or policy applies at the time of an *accident;*

  **b.** For which an insuring or bonding company denies coverage or is or becomes insolvent;

  **c.** That, with respect to damages for *bodily injury* only, is a hit-and-run vehicle whose operator or owner cannot be identified and that hits, or causes an *accident* resulting in *bodily injury* without hitting:

    **1.** An individual *named insured* or any *family member;*

    **2.** A vehicle that the *named insured* or any *family member*, if the *named insured* is an individual, are *occupying;*

    **3.** A covered *auto;* or

  **d.** Insured under a special automobile insurance policy issued in accordance with New Jersey law or regulation.

However, an *uninsured motor vehicle* does not include any vehicle:

  **a.** Owned by, or available or finished for the regular use of the *named insured* or, if the *named insured* is an individual, any *family member;*

  **b.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

  **c.** Owned by any governmental unit or agency;

  **d.** Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation;

  **e.** Operated on rails or crawler treads;

  **f.** Designed for use mainly off public roads while not on public roads; or

  **g.** While located for use as a residence or premises.

**2.** *Underinsured motor vehicle* means the following:

    **a.**  With respect to an *insured* who:

        **1.**  Is not the individual *named insured* under this policy; and

        **2.**  Is an individual *named insured* under one or more other policies providing similar coverage, *underinsured motor vehicle* means a land motor vehicle or *trailer* of any type to which a liability bond or policy applies at the time of an *accident* but its limit of liability is less than the highest applicable limit of liability under any coverage form or policy providing coverage to that *insured* as an individual *named insured.*

    **b.**  With respect to an *insured* who:

        **1.**  Is not the individual *named insured* under this policy or any other policy; and

        **2.**  Is insured as a *family member* under one or more other policies providing similar coverage, *underinsured motor vehicle* means a land motor vehicle or *trailer* of any type to which a liability bond or policy applies at the time of an *accident* but its limit for liability is less than the highest applicable limit of liability under any coverage form or policy providing coverage to that *insured* as a *family member.*

    **c.**  With respect to any other *insured* who is not described in the preceding Paragraphs a or b, *underinsured motor vehicle* means a land motor vehicle or *trailer* of any type to which a liability bond or policy applies at the time of an *accident* but its limit of liability is less than the Limit of Liability for this coverage.

However, an *underinsured motor vehicle* does not include any vehicle:

    **1.**  Owned or operated by a self-insurer under any applicable motor vehicle law;

    **2.**  Owned by any governmental unit or agency;

    **3.**  Owned by, or available or finished for the regular use of the *named insured* or, if the *named insured* is an individual, any *family member;*

    **4.**  Operated on rails or crawler treads;

    **5.**  Designed for use mainly off public roads while not on public roads; or

    **6.**  While located for use as a residence or premises.

**NOTICE TO POLICYHOLDERS**
**REVISED TERRORISM ENDORSEMENT**


If your renewal policy lists any of the following endorsements on the renewal Declarations,

                    MCA 411

                    MCA 413

                    MCA 417

                    MCA 418

the endorsement includes, as Section B, a terrorism exclusion that will become effective on January 1, 2006 if the federal Terrorism Risk Insurance Act of 2002 (TRIA) is not extended by that date. This exclusion will replace the TRIA provisions, designated as Section A, in this endorsement.

No coverage is provided by this notice, nor can it be construed to replace any provision of your policy. You should read your policy and any related endorsements and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

Contact your agent if you have any questions.



**Cardigan General Insurance Services**
6320 Canoga Ave, 12th Floor
Woodland Hills, CA 91367

# - IMPORTANT NOTICE -

### TO REPORT A CLAIM TO CARDIGAN GENERAL INSURANCE SERVICES:

**In the event you have:**

- **a claim to report to us**
- **an estimate to send**
- **a claim invoice to send**
- **or an inquiry about the status of a claim**

**please utilize the following contact information**

Please call **1-877-353-8672** toll free during or after business hours or you can email your claim and contact information to <u>claims@cardiganclaims.com</u>. Please include all claim information and contact information.

Or fax to **(818) 449-9099**

Information regarding all claims issues may be sent by mail to

6320 Canoga Avenue, 12th Floor
Woodland Hills, CA 91367

**State National Insurance Company, Inc.**

**Policy Holder Privacy Statement**

As a policyholder of State National Insurance Company, Inc., you may remember that you purchased your State National Insurance Company, Inc. policy from an insurance agent.  Please understand that the agent from whom you purchased your State National Insurance Company, Inc. policy is not affiliated with State National Insurance Company, Inc., but rather is a separate legal entity.  In the process of purchasing your State National Insurance Company, Inc. policy, you may have provided your insurance agent with various information, including nonpublic personal information about yourself.  You did not provide any such information directly to State National Insurance Company, Inc., but on occasion we may receive such information from your insurance agent.  This statement is intended to explain and disclose State National Insurance Company, Inc.'s policies and practices regarding the collection, disclosure and protection of such information.

State National Insurance Company, Inc. will provide customers like yourself with a copy of our privacy policy at the beginning of our relationship and annually thereafter, unless and until our relationship ends.  As our products and services continue to evolve, it may be necessary to review and revise our privacy policies, in which case we will provide you with an updated privacy notice.

I.      <u>Financial Information Collected</u>.

During the ordinary course of our business, State National Insurance Company, Inc. may – as explained above – collect information about you from the following sources:

- Information the insurance agent receives from you on applications or other forms;
- Information about your transactions (including claims) with us, our affiliates and others; and
- Information we receive from other agents, brokers, administrators, insurance support agencies, legal counsel, consumer reporting agencies and government reporting agencies.

II.     <u>Financial Information Disclosed</u>.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

III.    <u>Parties To Whom Information is Disclosed</u>.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

IV.     <u>Confidentiality and Security of Information</u>.

We restrict access to information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards to guard your information.

V.      <u>Access to and Correction of Your Information</u>.

You may write to us if you have any questions about the information that we may have in our records about you.  We will respond within 30 business days from the date such request is received to your inquiry.  If you wish, you may review this information in person or receive a copy at a reasonable charge.  You can notify us in writing if you believe any information should be corrected, amended, or deleted and we will review your request.  We will either make the requested change or explain why we did not do so.  If we do not make the requested change, you may submit a short written statement identifying the disputed information, which will be included in all future disclosures of your information.

We value your business.  This statement is for your information.  No response is necessary.

**State National Insurance Company, Inc.**

1900 L. Don Dodson Drive

Bedford, TX 76021

Phone:   818.589.8900

Claims:   877.467.4262

# WARNING

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects. such person to criminal and civil penalties.

SNICFW0115

**MCA 301** 01 97

**ADDITIONAL *INSURED* — LESSOR**

*This endorsement modifies the policy to provide that certain leased autos are considered as owned autos and includes the lessor as an insured. The required information may be shown below or elsewhere in the policy.*

**The provisions of this endorsement apply only when the endorsement number is listed in the Declarations.**

<u>**Except as provided below, all other provisions in this policy are unchanged.**</u>

Policy # DDM-159000006

**SCHEDULE**

Insurance Company:   State National Insurance Company

Policy Number: DDM-159000006                    From: 11/26/2015                    To: 11/26/2016
                                                                                                                     (Expiration Date)

Named Insured:   AMDC Recreation LLC
Address:             JERSEY RECREATION LLC
                         717-727 Broadway
                         Newark, NJ  07104

Additional *Insured* (Lessor):   Advantage Funding Commercial Capital
Address:                                   Corp
                                                PO Box 1839
                                                Portland, OR  97207

Description of *Leased Autos:*   2005 FORD/E450 - 20 seating 1FDXE45P95HA59906
                                             2013 FORD/E450 - 20 seating 1FDFE4FS0DDA93317
                                             2013 FORD/E450 - 20 seating 1FDFE4FS0DDA85704
                                             2013 FORD/E450 - 20 seating 1FDFE45SXDDA85712
                                             2014 FORD/E450 - 20 seating 1FDFE4FS6EDA29106
                                             2012 FORD/E450 - 20 seating 1FDFE4FS0CDA87063
                                             2013 FORD/E450 - 20 seating 1FDFE4FS6DDA57034

| Coverages | Limits of Liability |
|---|---|
| Liability — Coverage A | $  1,000,000 |
| Medical Payments — Coverage B | $  0 |
| Personal Injury Protection — Coverage C | $   Separately stated in each endorsement |
| Comprehensive — Coverage F | Actual Cash Value or Cost of Repair (whichever is less) minus Deductible of $0 for each *Leased Auto.* |
| Collision — Coverage G | Actual Cash Value or Cost of Repair (whichever is less) minus Deductible of $0 for each *Leased Auto.* |

**COVERAGE MODIFICATION**

**A.**   Any *leased auto* described in the Schedule of this endorsement will be considered as a covered *auto you* own and not a covered *auto you* borrow, hire or rent.

For such covered *autos, the* Who is An *Insured* provisions are amended to include the lessor named in the Schedule of this endorsement as an *insured.*

**B.**   The coverages designated in the Schedule as provided by this endorsement cease to apply to the described *leased autos* on the expiration date shown in the Schedule, or on the date the lessor (or an agent of the lessor) takes possession of the *leased auto,* whichever occurs first.

**CHANGES IN CONDITIONS**

 ®

© 1996 MSO®, Inc.

**A.** The SPECIAL PHYSICAL DAMAGE CONDITION — *LOSS* PAYABLE is amended by adding the following:

The lessor named in the Schedule of this endorsement will be considered a *loss* payee for the physical damage coverages designated in the Schedule.

**B.** The COMMON CONDITION — CANCELLATION / TERMINATION is amended by adding the following:

**1.** If *we* cancel this policy, *we* will mail or send the lessor named in the Schedule of this endorsement the same advance notice of cancellation *we* send to the *first named insured.*

**2.** If the *first named insured* cancels this policy, *we* will mail or send notice to the lessor.

**3.** Cancellation ends the agreement provided under this endorsement.

**C.** The COMMON CONDITION — PREMIUMS isamended by adding the following:

The lessor named in the Schedule of this endorsement is not responsible for payment of any premiums.

**ADDITIONAL DEFINITION**

As used in this endorsement, the following definition is added:

*Leased auto* means an *auto* leased or rented to *you* (including any extra, replacement, or substitute *auto* needed to meet seasonal or other needs) under a leasing or rental agreement that requires you to provide direct, primary insurance for the lessor.

MCA 301 01 97

**MCA 419** 02 06

**TERRORISM EXCLUSIONS**
*This endorsement extends the policy to exclude certain loss arising out of terrorism.*
**The provisions of this endorsement apply only when the endorsement number is listed in the Declarations.**
**Except as provided below, all other provisions in this policy are unchanged.**

1. **COVERAGE MODIFICATION – LIABILITY**
   The following exclusion is added to the PART II C – LIABILITY NOT INSURED:

   ***TERRORISM* EXCLUSION**
   *We* do not insure *bodily injury* or *property damage* arising directly or indirectly out of *terrorism,* including any action taken in hindering or defending against an actual or expected incident of *terrorism.*

   However this exclusion only applies if one or more of the following are attributable to an incident of *terrorism:*
   A. The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction or radiation or radioactive contamination; or

   B. Radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

   C. The *terrorism* is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   D. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials; or

   E. The total of *insured damage* to all types of property sustained by all persons and entities affected by the *terrorism* (and including loss of Business Income and Extra Expense sustained by owners or occupants of such damaged property), exceeds $25,000,000; or

   F. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:
      1. Physical injury that involves a substantial risk of death; or

      2. Protracted and obvious physical disfigurement; or

      3. Protracted loss of or impairment of the function of a bodily member or organ.

   Paragraphs E and F above describe the thresholds used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply for the purpose of determining whether the *Terrorism* Exclusion will apply to that incident. When the *Terrorism* Exclusion applies to an incident of *terrorism*, there is no coverage under this insurance.

   In the event of any incident of *terrorism* that is not subject to the *Terrorism* Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this insurance.

   Multiple incidents of *terrorism* which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident of *terrorism.*

2. **COVERAGE MODIFICATION – PHYSICAL DAMAGE**
   A. The following exclusion is added to the PART III C – EXCLUSIONS:

   ***TERRORISM* EXCLUSION**
   1. *We* do not provide insurance for any *loss* or damage directly or indirectly arising out of or resulting from *terrorism,* including any action taken in hindering or defending against an actual or expected incident of *terrorism.* Such *loss* or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss.*

   2. Regardless of the amount of damage and *losses,* this *Terrorism* Exclusion applies to any incident of *terrorism:*
      a. That is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction or radiation or radioactive contamination; or

      b. In which radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

      c. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

      d. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials.

   In incidents of *terrorism* other than those described in Paragraphs 2.a, 2.b, 2.c, and 2.d above, the *Terrorism* Exclusion will not apply unless the *insured damage* to all types of property (in the United States, its territories and possessions, the District of Columbia, Puerto Rico and Canada), sustained by all persons and entities affected by the *terrorism* (and including *loss* of Business Income and Extra Expense sustained by owners or occupants of such damaged property), exceeds a total of $25,000,000. Multiple incidents of *terrorism* which occur within a seventy-two hour period and appear to be carried out in concert or to



® © 2006, MSO®, Inc.

have a related purpose or common leadership will be deemed to be one incident of *terrorism*.

The preceding paragraph describes the threshold used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether the *Terrorism* Exclusion will apply to that incident. When the *Terrorism* Exclusion applies to an incident of *terrorism*, there is no coverage under this insurance.

In the event of any incident of *terrorism* that is not subject to the *Terrorism* Exclusion, coverage does not apply to any element of *loss* or damage that is otherwise excluded under this insurance.

**3.** However, with respect to any activity that also comes within the terms of the Governmental / Legal / War Exclusion, that exclusion supersedes this *Terrorism* Exclusion.

In the event of an incident of *terrorism* that involves nuclear reaction or radiation, or radioactive contamination, this *Terrorism* Exclusion supersedes the Nuclear / Radioactive *Loss* Exclusion.

**B.** The Part III – GOVERNMENTAL / LEGAL / WAR COMMON EXCLUSION is replaced by the following:

**GOVERNMENTAL / LEGAL / WAR**
- Any act or condition of: war (declared or not), civil war, invasion, insurrection, rebellion, revolution, or seizure of power, including acts done to defend against any such. With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this exclusion supersedes the Nuclear / Radioactive *Loss* Exclusion.

- Knowing violation of penal law or ordinance committed by, or with the consent of, an *insured*. Statutory fines or liability. Exemplary or punitive damages.

- Confiscation, *loss*, or seizure under customs, drug enforcement, or quarantine legislation or regulations. *Loss* to property that is contraband or in the course of illegal transportation or trade.

**3. ADDITIONAL DEFINITIONS**
The following definitions apply under this endorsement:

*Insured damage* means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

*Terrorism* means activities against persons, organizations or property of any nature:
**A.** That involve the following or preparation for the following:
  **1.** Use or threat of force or violence;

  **2.** Commission or threat of a dangerous act; or

  **3.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**B.** When one or both of the following applies:
  **1.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

  **2.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.